2009 UT App 112

**SALT LAKE COUNTY, Petitioner,**

v.

**LABOR COMMISSION and John Wisner, Respondents.**

No. 20080265–CA.

Court of Appeals of Utah.

April 30, 2009.

David H.T. Wayment, Salt Lake City, for Petitioner.

Gary E. Atkin, Marsha Atkin, and Alan L. Hennebold, Salt Lake City, for Respondents.

Before Judges THORNE, ORME, and McHUGH.

## OPINION

ORME, Judge:

¶ 1 Salt Lake County challenges the Utah Labor Commission's determination that the County was not entitled to a 15% reduction in compensation benefits it owed to John Wisner (Employee). As we determine that the Commission did not exceed its discretion in concluding that Employee did not willfully disobey any lifting restriction put in place by the County, we conclude that the County was not entitled to the 15% reduction.

## BACKGROUND [1]

¶ 2 On July 2, 2002, while working as a swimming pool maintenance specialist for the County, Employee was injured "by accident," Utah Code Ann. § 34A–2–401(1) (2005), when he was reconnecting a chlorine line. To perform this task, Employee had to crawl into a pit that contained a 1500 gallon chlorine tank and move it. When "[Employee] put his back against the wall for leverage and shoved and twisted the tank with his arms," "[he] felt pain in the middle of his back at waist height and an immediate shock through his back down his right leg which went dead."

¶ 3 The July 2002 injury was determined to have arisen during the course of Employee's employment with the County, see id., even though Employee had previously undergone a L4–5 microdiscectomy during August of 1995, "because [Employee had] engaged in [an] unusual exertion greater than average non-industrial life." Employee's doctor determined that the July 2002 accident "caused a recurrent disc herniation," which was "a new injury ... requiring surgery." Following surgery in November 2002, Employee's

doctor placed Employee on "permanent work restrictions ... [with] no lifting over 50 pounds." Further, Employee "was assigned a 12% whole person impairment rating under the Commission's impairment guides," with 10% of his impairment attributed to his 1995 injury and 2% of his impairment attributed to his 2002 injury. As a result of the July 2002 injury, Employee was entitled to compensation benefits at a maximum rate of $478 per week.

¶ 4 When Petitioner returned to work as a swimming pool maintenance specialist with the County, he was able to perform the required work, occasionally taking pain medication. However, on May 6, 2005, Employee suffered another workplace injury while installing a 250 to 300 pound circulation pump. During the installation, Employee first used a crane to remove the pump from the truck and then used a dolly to transport the pump to the pool. At the pool, "[Employee] had to manually manipulate the pump into place," which "required [him] to straddle the pump and bend over [to] jerk it upwards to line it up for the installation." When Employee jerked up on the pump, "[he] felt immediate pain in the middle of his back at waist level."

¶ 5 Employee specifically testified:

I didn't have to lift it at all. I took it off the truck with a crane, put it on the dolly, rolled it in there, and then pried it up on the stand.

But I had to jump it to line it up with the coupling on the thing. It's a 15–horsepower motor, probably weighed, I don't know, 250, 300 pounds. But it wasn't, you know, you weren't lifting it, you were just jockeying it around. And I ... straddled it ..., and I just jerked up on it to line it up. And, you know, once you've done that to your back....

Employee emphasized that "[he] didn't lift a 200– or 300–pound pump." Instead, "[he] grabbed it and ... jerked it around." When asked at the hearing, Employee was unable to estimate how much weight he effectively

---

1. Unless otherwise noted, our recitation of the facts is based on the Administrative Law Judge's findings of fact in her August 27, 2007 order, which were adopted by the Commission in its March 4, 2008 order, and on the Commission's discussion of the relevant facts in its March 4, 2008 order.

lifted while maneuvering and jerking up on the pump. He testified that he made an effort to comply with the work restrictions imposed by his doctor and that, "[t]o the best of [his] knowledge," he did comply with those restrictions.

¶ 6 The Administrative Law Judge (ALJ) determined that the May 2005 injury arose during the course of his employment with the County; that the injury was accidental; and that, because the injury was "a subsequent injury with the same employer," Employee only needed to prove ordinary exertion although "his injury would meet either a usual or unusual exertion." Employee's doctor "opined [that he] suffered an aggravation of his chronic low back pain" as a result of the May 2005 accident but that "[he] was medically stable." The doctor placed Employee on "new, permanent work restrictions of no prolonged walking or standing[;] no prolonged sitting[;] no repeated bending, stooping, lifting or twisting[;] ... lifting restrictions of 10–25 pounds maximum[;] no diving[;] and no driving while taking narcotic medications." Employee was not assigned a different impairment rating as a result of the May 2005 injury. At the time the ALJ's order was issued, Employee had not worked since September 2005. His job with the County required lifting more than 25 pounds, and although he sought other employment, he was not hired.

¶ 7 While indicating that Employee exceeded the lifting restrictions imposed by his doctor after the July 2002 injury, the ALJ determined that "there is no evidence that such activity was a failure to obey an order or a written safety policy of the [County]." The ALJ further determined that imposing a 15% penalty on Employee was not required because Employee's conduct had not been in willful disobedience of any safety order of the County. *See* Utah Code Ann. § 34A–2–302(3)(a)(ii) (2005). The ALJ concluded that Employee sustained a permanent, total disability "as the result of the May 6, 2005 industrial injury" and that Employee was

"entitled to ... compensation at the rate of $501 per week."

¶ 8 The County appealed the ALJ's decision to the Labor Commission, arguing, inter alia, that the County was entitled to a 15% reduction in the rate of compensation owed to Employee because Employee willfully disobeyed a safety order from the County when he was maneuvering the pump. According to the County, the work restrictions recommended by Employee's doctor constituted a safety rule or order imposed by the County. The Commission adopted the ALJ's findings of facts and affirmed the ALJ's decision. The Commission specifically determined that "[Employee]'s efforts to perform his work duties [could not] be fairly characterized as a 'willful' failure to comply with his lifting restrictions." The Commission "d[id] not view the physician's restrictions as having been 'adopted' by [the County]." The County then sought judicial review of the Commission's final order.

## ISSUE AND STANDARD OF REVIEW

 ¶ 9 The pivotal issue before the court is whether the Commission properly determined that Employee's actions were not willful under Utah Code section 34A–2–302(3)(a)(ii), and that the County is therefore not entitled to a 15% reduction in the compensation benefits it owed Employee.[2] The applicable standard of review for agency decisions turns on whether the Legislature has statutorily granted the agency discretion. *See AE Clevite, Inc. v. Labor Comm'n*, 2000 UT App 35, ¶ 6, 996 P.2d 1072, *cert. denied*, 4 P.3d 1289 (Utah 2000). "When the Legislature has granted an agency discretion to determine an issue, we review the agency's action for reasonableness. Absent a grant of discretion, we use a correction-of-error standard in reviewing an agency's interpretation or application of a statutory term." *Id.* (citations and internal quotation marks omitted).

 ¶ 10 The Legislature has statutorily granted the Commission decisional discretion. *See* Utah Code Ann. § 34A–1–301

---

2. The County also raises the issue of whether it adopted as a safety policy the work restrictions imposed by Employee's doctor. We need not reach this issue as we determine that Employee's actions were not willful.

(2005) ("The [C]ommission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this chapter or any other title or chapter it administers."). Thus, we review the Commission's decision that Employee's conduct was not willful, for purposes of section 34A–2–302(3)(a)(ii), for reasonableness and will only overturn the Commission if its "determination exceeds the bounds of reasonableness and rationality so as to constitute an abuse of discretion under section 63–46b–16[(4)](h)(i) of the [Utah Administrative Procedures Act]." *AE Clevite, Inc.*, 2000 UT App 35, ¶ 7, 996 P.2d 1072. *See* Utah Code Ann. § 63–46b–16(4)(h)(i) (2004) (current version at Utah Code Ann. § 63G–4–403(4)(h)(i) (2008)).

## ANALYSIS

 ¶ 11 Under the Utah Workers' Compensation Act, an employer is entitled to a 15% reduction in the compensation it owes to an employee when the employee's injury does not "result[ ] in death" and the "injury is caused by the willful failure of the employee: (i) to use safety devices when provided by the employer or (ii) to obey any order or reasonable rule adopted by the employer for the safety of the employee." Utah Code Ann. § 34A–2–302(3)(a) (2005). The term " 'willful' implie[s] something in addition to mere negligence." *Van Waters & Rogers v. Workman*, 700 P.2d 1096, 1098 (Utah 1985). Accordingly, "negligence alone or even gross negligence is not sufficient to constitute 'willful failure.' " *Id.* In *Van Waters & Rogers v. Workman*, 700 P.2d 1096 (Utah 1985), the Utah Supreme Court outlined a "workable formula" for "distinguishing willful failure from less culpable conduct," stating:

> "[T]he general rule [is] that the deliberate defiance of a reasonable rule laid down to prevent serious bodily harm to the employee will usually be held to constitute willful misconduct, in the absence of a showing of . . . specific excuses[.]
>
> . . . .
>
> If the employee had some plausible purpose to explain his violation of a rule, the defenses of violation of safety rules or willful misconduct are inapplicable, even though the judgment of the employee

might have been faulty or his conduct rash[.]"

*Id.* at 1099 (quoting 1A A. Larson, *Workmen's Compensation* §§ 32.30, 33.40 (1982)) (omissions in original).

¶ 12 In *Van Waters*, the Supreme Court held that the employee's conduct in failing to wear safety goggles as required by the employer was not willful because the employee did not act in total disregard of the requirement but instead tried to complete the required work wearing goggles, only removing them after they kept fogging up and preventing him from safely completing his task. *See id.* at 1097, 1099. *See also City of Las Animas v. Maupin*, 804 P.2d 285, 286 (Colo. Ct.App.1990) (determining, under a similar Colorado statute, that the "evidence could support a finding that" the employee's action in removing a safety glove was not willful when the employee removed the glove so he could "push a lever that would not stay down" and "believed that he could not operate certain equipment with the glove on and that pushing the lever with his bare hand would, under normal conditions, pose no safety threat"); *Smit v. Geyer Detective Agency, Inc.*, 130 So.2d 882, 884 (Fla.1961) (concluding that the commission erred in determining that the employee's action in crossing the double line while driving was willful because "[r]ather than infer[ring] willfulness from this fact, it [wa]s equally as reasonable to conclude that the [employee] may have seen the truck ahead of him just prior to the accident, and that he instinctively swerved to the left in a vain attempt to avoid the collision"). *But see McCulloch v. Industrial Comm'n*, 109 Colo. 123, 123 P.2d 414, 415–16 (1942) (determining that an employee willfully failed to follow safety rule when employee, who was apprised of rule to wear goggles, intentionally chose not to wear goggles until he "deemed [it] necessary," and therefore "acted upon his own judgment . . . about the use of goggles") (citation and internal quotation marks omitted) (omission in original).

¶ 13 In this case, the evidence shows that Employee, while in the course of his work duties, tried to install a very heavy pump by physically maneuvering it into place. This task did not require that Employee physical-

ly lift the pump but required that he use a certain amount of force to maneuver it and jockey it into place. Employee testified that he could not "lift 250, 300 pounds" and stated that he tried to comply with his doctor's lifting restrictions while carrying out his work duties.

■ ¶ 14 The County argues that "[b]ecause [Employee] should have recognized the probable consequences of lifting outside his restriction, his violation was willful." It further asserts that because both the ALJ and the Commission found that Employee violated his doctor's restriction when he jerked up on the pump, and because Employee denied "lifting" outside his restrictions, he provided no reasonable explanation for violating his doctor's restrictions as required under *Van Waters*. *See* 700 P.2d at 1098–99. We disagree.

¶ 15 Even though Employee did not specifically address why he violated his doctor's restriction, Employee's testimony as a whole explains his actions. He stated that he did not think he would violate the lifting restriction while maneuvering the pump because he never had to "physically ... lift that pump." Moreover, his testimony indicates that he tried to comply with his doctor's restrictions. Based on Employee's testimony and the other evidence of record, the ALJ and the Commission determined that although, technically speaking, Employee's jerking up on the pump violated his doctor's lifting restriction, Employee did not subjectively consider his actions as "lifting" and his attempt to maneuver and install the pump was not in willful disregard of his lifting restriction. While in hindsight Employee's decision to maneuver

the 250 to 300 pound pump without assistance may well have been careless, we conclude that the determination his conduct was not willful under Utah Code section 34A–2–302(3)(a)(ii) does not "exceed[ ] the bounds of reasonableness and rationality so as to constitute an abuse of discretion." *AE Clevite, Inc. v. Labor Comm'n*, 2000 UT App 35, ¶ 7, 996 P.2d 1072, *cert. denied*, 4 P.3d 1289 (Utah 2000). As correctly argued by the Commission in the case before us, if Employee's conduct was negligent or even grossly negligent, it does not necessarily follow that he acted in willful disregard of any safety rule or policy adopted or set forth by the County.[3] *See Van Waters*, 700 P.2d at 1098–99.

## CONCLUSION

¶ 16 The Commission's determination that Employee did not willfully disregard his doctor's lifting restriction is reasonable because Employee's attempt to move the pump by himself appears to have been a negligent act rather than a willful act. We accordingly affirm the Commission's decision to not offset, by 15%, the compensation owed to Employee.

¶ 17 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, CAROLYN B. McHUGH, Judge.

---

3. The County also discusses a statement Employee made, citing to Employee's medical records, which indicated that Employee did not seek help when maneuvering the pump because he does not like to ask for help. Even if Employee does not like to ask for help, Employee's decision to move the pump by himself can still be considered negligent rather than willful when the evidence shows that Employee thought he was complying with his doctor's lifting restrictions and thought he could maneuver the pump without assistance.