**2017 UT App 206**

# THE UTAH COURT OF APPEALS

JAVIER ROJAS,
Petitioner,

*v.*

LABOR COMMISSION, FERRARI COLOR,
AND WORKERS' COMPENSATION FUND,
Respondents.

Opinion
No. 20160644-CA
Filed November 16, 2017

Original Proceeding in this Court

W. Scott Lythgoe and Addison D. Larreau, Attorneys
for Petitioner

Andrea Mitton and Matthew J. Black, Attorneys for
Respondents Ferrari Color and Workers'
Compensation Fund

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

HAGEN, Judge:

¶1      Javier Rojas was injured while working as a printing machine operator for Ferrari Color. Rojas seeks judicial review of the Utah Labor Commission's decision that he was not entitled to a 15% increase in disability compensation because his injury did not result from a willful safety violation by his employer. We conclude that Ferrari Color's conduct does not constitute a "willful failure" under the Utah Workers' Compensation Act and therefore decline to disturb the Commission's decision.

BACKGROUND[1]

¶2    As a printing machine operator, Rojas's duties required him to place print media onto the machine's rollers and ensure that the media did not become wrinkled during the printing process. To watch the media as it ran through the printer, Rojas stood on a box and looked through an open center access panel.

¶3    In January 2013, Rojas saw the media wrinkling and reached into the printer to flatten it. Before he could remove his left hand, the industrial printer's support bar briefly trapped his hand and a portion of the printer head scraped across it, tearing Rojas's skin and causing his hand to bleed. Rojas reported the injury to the print department manager (the manager), but Rojas declined medical treatment.

¶4    The next month, Ferrari Color terminated Rojas's employment for an unrelated timeclock violation. Following his termination, Rojas contacted the Utah Occupational Safety and Health Division (UOSH) and reported that the manager had removed the printer's safety sensor. In response, a UOSH inspector conducted a site inspection in April 2013 and found that a safety sensor had been bypassed, allowing the printer to run with the doors open. Under Utah law, an employer may not lawfully "remove, disable, or bypass safety devices and safeguards." Utah Code Ann. § 34A-2-301(1)(d) (LexisNexis 2015). Consequently, Ferrari Color was cited for a serious violation of safety standards.

¶5    Rojas subsequently filed a hearing application with the Commission, requesting workers' compensation benefits along with a 15% increase in disability compensation for a willful safety violation. After a hearing, the administrative law judge

---

1. Our recitation of the facts is based on the Administrative Law Judge's findings of fact, which the Commission adopted in its July 5, 2016 order.

(the ALJ) awarded Rojas all of the requested benefits, including the 15% increase.

¶6     Ferrari Color and its insurance carrier, Workers' Compensation Fund (collectively, Ferrari Color), appealed the ALJ's order to the Commission. Among other things, Ferrari Color asserted that it did not engage in a willful safety violation that would entitle Rojas to a 15% increase in compensation under Utah Code section 34A-2-301(2). The Commission adopted the ALJ's factual findings but modified the ALJ's decision, setting aside the portion of the order awarding Rojas a 15% increase in disability compensation. Rojas petitions for judicial review of that modification.

ISSUE AND STANDARD OF REVIEW

¶7     Rojas contends that the Commission erred when it determined that Ferrari Color's conduct was not willful and thus did not trigger a 15% increase in disability compensation under Utah Code section 34A-2-301(2).

¶8     Section 63G-4-403(4) of the Utah Administrative Procedures Act "authorizes appellate courts to grant relief to a party substantially prejudiced by an error in the final disposition of a claim adjudicated by an administrative agency." *Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242; *see also* Utah Code Ann. § 63G-4-403(4) (LexisNexis 2016). Review of the Commission's willfulness determination would fall under section 63G-4-403(4)(d), which authorizes an appellate court to grant relief where "the agency has erroneously interpreted or applied the law." Because this subsection neither expressly states nor implies a standard of review, "we are free to apply our traditional approach for selecting an appropriate standard of review." *See Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶¶ 21, 23–24, 308 P.3d 461.

¶9     Determining whether Ferrari Color committed a willful safety violation involves an application of the law to the facts,

often referred to as a "mixed question" of law and fact. *See id.* ¶ 24. Appellate courts apply deferential or nondeferential review to mixed questions, depending on whether the issue is more fact-like or more law-like. *See id.* ¶ 36–37. Here, the determination of willfulness is more fact-like "[d]ue to the fact-intensive inquiry involved at the agency level in determining whether it is appropriate to award benefits, including credibility determinations that an appellate court is in an inferior position to review." *JP's Landscaping v. Labor Comm'n*, 2017 UT App 59, ¶ 12, 397 P.3d 728 (alteration in original) (citation and internal quotation marks omitted)); *see also Murray*, 2013 UT 38, ¶ 21 (citing negligence as a finding that is more fact-like and therefore entitled to deference). As a result, deference to the Commission's ultimate determination is warranted.

¶10    In reviewing mixed findings, however, "we must be vigilant . . . to ensure that they are based on correct legal principles." *In re Baby B.*, 2012 UT 35, ¶ 47, 308 P.3d 382. Therefore, we "review the legal standard applied to a particular mixed question for correctness." *Sawyer v. Dep't of Workforce Servs.*, 2015 UT 33, ¶ 25, 345 P.3d 1253.

ANALYSIS

¶11    Under the Utah Workers' Compensation Act, an employee is entitled to a 15% increase in compensation when the employee's "injury is caused by the willful failure of an employer to comply with: (a) the law; (b) a rule of the commission; (c) any lawful order of the commission; or (d) the employer's own written workplace safety program." Utah Code Ann. § 34A-2-301(2) (LexisNexis 2015). Among other things, Utah Code section 34A-2-301(1)(d) provides that an employer is not permitted to bypass a safety device or safeguard. "The term 'willful' . . . implies something in addition to mere negligence." *Salas v. Industrial Comm'n*, 564 P.2d 1119, 1120 (Utah 1977). Thus, "negligence alone or even gross negligence is not sufficient to constitute 'willful failure.'" *Van Waters*, 700 P.2d 1096, 1098 (Utah 1985). Gross negligence is defined as "carelessness or

recklessness to a degree that shows utter indifference to the consequences that may result." *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 14, 284 P.3d 616 (citation and internal quotation marks omitted). "Willful failure" thus requires more than "utter indifference" to the risks that the safety violation poses. *See id.* (citation and internal quotation marks omitted).

¶12    In *Van Waters*, the Utah Supreme Court construed the term "willful failure" in the context of Utah Code section 34A-2-302(3)(a), which provides for a corresponding decrease in compensation for an employee's willful failure to follow safety guidelines. *See* 700 P.2d at 1098–99. The court adopted the following "workable formula" for "distinguishing willful failure from less culpable conduct":

> [T]he general rule . . . [is] that the deliberate defiance of a reasonable rule laid down to prevent serious bodily harm to the employee will usually be held to constitute wilful misconduct, in the absence of a showing of . . . specific excuses . . . .
>
> . . . .
>
> If the employee had some plausible purpose to explain his violation of a rule, the defenses of violation of safety rules or wilful misconduct are inapplicable, even though the judgment of the employee might have been faulty or his conduct rash . . . .

*Id.* at 1099 (first omission added) (quoting 1A A. Larson, *Workmen's Compensation* §§ 32.30, 33.40 (1982)).

¶13    The parties agree that the term "willful failure" has the same meaning in both sections 34A-2-301 and -302. As a result, although *Van Waters* involved alleged willful failure on the part of an employee, it is equally instructive in the context of the present case involving alleged willful failure on the part of an employer. *See id.* 1098–99. But Rojas argues that the Commission

misapplied *Van Waters*'s "workable formula." Specifically, Rojas contends that Ferrari Color's conduct should be considered a willful failure *unless* it presents evidence of a plausible purpose to explain the safety violation. We review the Commission's interpretation of the applicable legal standard for correctness. *See Sawyer*, 2015 UT 33, ¶ 25.

¶14 Under the *Van Waters* formula, the Commission must first determine whether the relevant conduct is in "deliberate defiance of a reasonable rule laid down to prevent serious bodily harm." *See* 700 P.2d at 1099. Assuming the Commission finds deliberate defiance of a safety rule, the employer may then present evidence of a plausible purpose to excuse the violation. On the other hand, if the Commission determines that the conduct was not in deliberate defiance of a safety rule, there is no need for the employer to present evidence of a plausible purpose to avoid the 15% increase in compensation. *See Salt Lake County v. Labor Comm'n*, 2009 UT App 112, ¶ 15, 208 P.3d 1087 (affirming the Commission's determination that an employee's violation of a lifting restriction was not willful without addressing whether there was a reasonable explanation for the violation).

¶15 In the present case, Ferrari Color was not required to present evidence excusing otherwise willful conduct because the Commission reasonably concluded that Ferrari Color did not deliberately disable or bypass safeguards on the printing machine.

¶16 Rojas testified that, on the day of the accident, one of the printing machine's vacuums[2] was inoperative and that the manager had to override the safety sensor so that the machine would continue to function. The Commission determined that this testimony was rebutted. The manager testified that he did

---

2. When the vacuum functions properly, it suctions the media in place as it moves on the conveyor through the printing machine.

not remove or override the safety sensor and that he did not know how to do so as of the date of Rojas's injury. In addition, he testified that the vacuum must have been operational that day because media cannot move on the conveyor without it, and a malfunction would have necessitated a service call. The Commission found that Ferrari Color neither requested a service call for vacuum problems in January or February 2013 nor recorded any such problems in the maintenance log. Based on this evidence, the ALJ found "credible [the manager's] testimony that he did not override the sensor," and the Commission later adopted this finding.

¶17 Rojas and his brother, also a Ferrari Color employee, further testified that the printer's access panels were often left open so that employees could easily see into the machine to know when media was wrinkling. The manager admitted that he had seen employees operating the machine without the panel in place, but the Commission found that there was "no indication that [the manager] or Ferrari Color deliberately defied safeguards for the printing machine at the time of Mr. Rojas's work injury."[3]

¶18 The Commission correctly determined that Ferrari Color did not willfully or deliberately bypass a safety device or safeguard on the date of Rojas's injury. The Commission credited the manager's testimony that he had not overridden the safety sensor at the time of the accident, as Rojas had claimed. In fact, the Commission found that the manager did not even know how to override the sensor at that time. While there was evidence to suggest that the manager had seen employees

_____

3. The manager knew that a service technician had overridden the sensor sometime after the date of Rojas's injury and allowed employees to continue operating the printer with the safety sensor bypassed and its access panels open. That conduct resulted in the April 2013 citation, but, as the Commission noted, "that was months after the work accident in question."

operating the machine with the access panels open, Rojas did not establish that the manager knew, at the time of the accident, that it was necessary to bypass a safety sensor to operate the machine in this fashion, or that the manager had ever directed employees to do so. Accordingly, applying the deferential standard of review, we hold that the evidence did not support a finding of a "willful violation," and the Commission properly set aside the 15% increase in disability compensation.

## CONCLUSION

¶19    We conclude that the Commission reasonably determined that Ferrari Color did not commit a willful safety violation entitling Rojas to a 15% increase in compensation. We therefore decline to disturb the Commission's decision.

_____