2012 UT 37

**Mark H. BLAISDELL, an individual, and Mark H. Blaisdell, D.D.S., P.C., a Utah professional corporation, Plaintiffs and Appellants,**

v.

**DENTRIX DENTAL SYSTEMS, INC., a Utah corporation, Defendant and Appellee.**

**No. 20100392.**

Supreme Court of Utah.

June 26, 2012.

---

Barry N. Johnson, David M. Kono, Joshua L. Lee, Salt Lake City, for appellants

Gregory M. Hess, Terry E. Welch, Salt Lake City, for appellee.

Associate Chief Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This case concerns the loss of data during the installation of software at a dentist's office. We hold that provisions in the software contract allocating the risk of such a loss to the consumer are enforceable.

## BACKGROUND

¶ 2 Mark H. Blaisdell is a dentist. Dr. Blaisdell performs professional dental services through his professional corporation. Like dentists everywhere, Dr. Blaisdell preserved information about his patients on computers. To aid his patient data requirement, Dr. Blaisdell agreed to purchase dental practice management software from Dentrix

Dental Systems, Inc. Under the terms of Dr. Blaisdell's purchase contract with Dentrix, the parties agreed that:

7. **LIMITATION OF LIABILITIES.** In no event will Dentrix be liable to you for any indirect, incidental, consequential, special, or exemplary damages arising out of or in connection with your use or inability to use the Product, the breach of any express or implied warranty, or otherwise in connection with the Product, its Software, the Documentation and/or the license even if Dentrix has been advised of the possibility of such damages. In no event shall Dentrix be held liable to you whenever registry files are examined and/or edited. Because some states do not allow the exclusion or limitation of liability for consequential or incidental damages, the above limitation may not apply to you.

In no event shall Dentrix's total liability for any damages, direct or indirect, in connection with the Product, its Software, the Documentation and/or this License exceed the license fees paid for your right to use this Product whether such liability arises from any claim based upon contract, warrants, tort or otherwise.

¶ 3 As promised, Dentrix sent software upgrades to Dr. Blaisdell. In 2006, Dentrix sent Dr. Blaisdell the G2 Software Upgrade. One of Dr. Blaisdell's employees installed the G2 Upgrade while on the phone with a Dentrix technical support employee. Following an unsuccessful attempt to install the G2 Upgrade on a computer workstation, the G2 Upgrade erased Dr. Blaisdell's electronic patient files, appointment book, treatment plans, and insurance information. Dentrix has acknowledged that, after Dr. Blaisdell's data loss, it discovered the G2 Upgrade could overwrite the Dentrix Data files on a computer system after an unsuccessful G2 Upgrade installation.

¶ 4 Everyone agrees that Dentrix had unambiguously warned Dr. Blaisdell to back up his patient data, but Dr. Blaisdell's backup system was not working properly. After his patient data was lost, Dr. Blaisdell's staff had to collect and reenter data manually while managing the office without patient records.

¶ 5 Dr. Blaisdell sued Dentrix under numerous theories including negligence in tort, strict products liability, and negligent misrepresentation. Dr. Blaisdell also sued for breach of contract, breach of implied warranty, breach of express warranty, breach of implied warranty of merchantability, fraudulent nondisclosure, and punitive damages. Dentrix resisted the claims and, in time, moved for summary judgment. The district court granted Dentrix's motion for summary judgment on Dr. Blaisdell's contract claims and his fraudulent nondisclosure claim. The court also granted summary judgment on the tort claims, which it determined were barred by the economic loss rule. Dr. Blaisdell appeals only the order granting summary judgment on his tort claims. Because neither the district court nor the parties addressed the limitation of liabilities clause quoted above on appeal, we ordered supplemental briefing on that issue.[1] We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 6 "We review the district court's grant of a motion for summary judgment for correctness. Summary judgment is appropriate when . . . 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"[2]

## ANALYSIS

¶ 7 The contract between Dr. Blaisdell and Dentrix limited Dr. Blaisdell's remedies for

---

1. "The appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or

passed on by the lower court." *Goodsel v. Dep't of Bus. Regulation*, 523 P.2d 1230, 1232 (Utah 1974) (internal quotation marks omitted).

2. *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 12, 192 P.3d 858 (citation omitted) (quoting Utah R. Civ. P. 56(c)).

damages in tort caused by defects in the Dentrix software. Dr. Blaisdell's supplemental brief provides three grounds for invalidating the limitation of liabilities clause: (1) the clause is unenforceable under the Utah Products Liability Act,[3] (2) the clause is unenforceable as to Dr. Blaisdell's strict products liability claim, and (3) the clause is unenforceable as to Dr. Blaisdell's gross negligence claim. We conclude that the limitation of liabilities clause is enforceable and affirm the district court's grant of summary judgment. We do so without reaching the centerpiece of the parties' briefing and argument, the economic loss rule.[4]

## I. THE UTAH PRODUCTS LIABILITY ACT DOES NOT RENDER THE LIMITATION OF LIABILITIES CLAUSE UNENFORCEABLE

■ ¶ 8 Dr. Blaisdell argues that the legislature, by enacting the Utah Products Liability Act, explicitly rendered unenforceable the limitation of liabilities clause at issue here. The relevant section of the Act is titled "Indemnification provisions void and unenforceable." It states,

> Any clause in a sales contract or collateral document that requires a purchaser or end user of a product to indemnify, hold harmless, or defend a manufacturer of a product is contrary to public policy and void and unenforceable if a defect in the design or manufacturing of the product causes an injury or death.[5]

As read by Dr. Blaisdell, this provision renders the limitation of liabilities clause in his contract with Dentrix unenforceable because it requires Dr. Blaisdell "to hold Dentrix— 'the manufacturer of a product'—harmless for 'any indirect, incidental, consequential, special, or exemplary damages.'"

¶ 9 The statutory language—"indemnify, hold harmless, or defend"—however, refers to situations where one party agrees to assume the tort liability of another.[6] In *Meadow Valley Contractors, Inc. v. Transcontinental Insurance Co.*, the court of appeals interpreted Utah Code section 13–8–1, which voids indemnification provisions in construction contracts.[7] In that statute, the legislature defined "indemnification provision" as an agreement "requiring the promisor to insure, hold harmless, indemnify, or defend the promisee or others against liability" for damages "resulting from the fault of the promisee, indemnitee, others, or their agents or employees."[8] The court of appeals determined that "the plain meaning of the statute voids only agreements requiring one party in a construction contract to personally insure against liability stemming from the other [contracting] party's negligence."[9] Additionally, in *American Rural Cellular, Inc. v. Systems Communication Corp.*, the court of appeals determined that, in a contract requiring one party to "'indemnify and hold [the other party] harmless from and against, any and all damages [and] liabilities,'"[10] "the hold-harmless provision does not apply to disputes between [the contracting parties], but instead to disputes between [one of the contracting parties] and third parties."[11]

■ ¶ 10 We note that the term "hold harmless" can release one of the contracting

---

**3.** Utah Code §§ 78B–6–701 to –707.

**4.** *Cf. Frey Dairy v. A.O. Smith Harvestore Prods., Inc.*, 886 F.2d 128, 132 (6th Cir.1989) ("There is no need to resort to the judicially created economic loss doctrine to delineate the line to be drawn between tort and contract remedies [when the] contract itself represents the bargain the parties made on this subject.").

**5.** Utah Code § 78B–6–707.

**6.** *Cf. Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 341 (Utah 1997) ("As USF & G's brief correctly states, however, 'Courts have over and over again interpreted the phrase "liability assumed by the insured under any contract" to apply only to indemnification and hold-

harmless agreements, whereby the insured agrees to "assume" the tort liability of another.'").

**7.** *Meadow Valley Contractors, Inc. v. Transcon. Ins. Co.*, 2001 UT App 190, ¶¶ 16–19, 27 P.3d 594.

**8.** Utah Code § 13–8–1(1)(b).

**9.** *Meadow Valley Contractors, Inc.*, 2001 UT App 190, ¶ 18, 27 P.3d 594.

**10.** *Am. Rural Cellular, Inc. v. Sys. Commc'n Corp.*, 939 P.2d 185, 192 (Utah Ct.App.1997).

**11.** *Id.*

parties from liability when that is the clear intent of the parties.[12] The language of Utah Code section 78B–6–707, like section 13–8–1, however, indicates the legislature's intent to void indemnification provisions. This interpretation is buttressed by the title of the statute: "Indemnification provisions void and unenforceable." "The title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent. However, it is persuasive and can aid in ascertaining [the statute's] correct interpretation and application."[13] Indemnity, where "one party agrees to answer for any specified or unspecified liability or harm that the other party might incur,"[14] is inapplicable to a circumstance where, as here, the contracting parties agreed to assign the risk of loss between themselves and limit the damages available. The disputed language in the contract at issue is not an indemnification provision. In fact, the limitation of liabilities clause does not use words of indemnification: rather, it limits Dentrix's liability to Dr. Blaisdell in tort to the license fees Dr. Blaisdell paid for the product. Utah Code section 78B–6–707 is inapplicable.[15]

## II. THE LIMITATION OF LIABILITIES CLAUSE IS ENFORCEABLE AND PROPERLY LIMITS DR. BLAISDELL'S STRICT PRODUCTS LIABILITY CLAIM

¶ 11 Utah law and precedent permit contracts limiting strict products liability

in some situations. Dr. Blaisdell argues that, as a matter of law, a strict products liability claim "is not affected by any disclaimer or other agreement" under section 402A of the Restatement (Second) of Torts.[16] *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*[17] recognized this court's adoption of "the doctrine of strict products liability set forth in section 402A of the Restatement (Second) of Torts,"[18] but this court has never expressly addressed the language Dr. Blaisdell quotes, which appears in a comment to the Restatement (Second) of Torts.

¶ 12 The Uniform Commercial Code permits an agreement that "limit[s] or alter[s] the measure of damages recoverable ... as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts."[19] This court has similarly stated, "On grounds of public policy, parties to a contract may not generally exempt a seller of a product from strict tort liability for physical harm to a user or consumer unless the exemption term is 'fairly bargained for and is consistent with the policy underlying that [strict tort] liability.' "[20] Furthermore, the Restatement (Third) of Torts: Products Liability recommends contractual limitations on tort liability for harm to property under certain circumstances.[21]

¶ 13 The district court addressed the enforceability of the limitation of liabilities clause as it applied to Dr. Blaisdell's contract

---

**12.** *See, e.g., Russ v. Woodside Homes, Inc.,* 905 P.2d 901, 903–04 (Utah Ct.App.1995) (upholding hold-harmless agreement in suit between contracting parties); *see also, e.g., Nelson ex rel. Hirschfeld v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints,* 935 P.2d 512, 513 (Utah 1997) (using "General Release and Hold Harmless Agreement" to settle a claim).

**13.** *State v. Gallegos,* 2007 UT 81, ¶ 16, 171 P.3d 426 (alteration in original) (citation omitted) (internal quotation marks omitted).

**14.** BLACK'S LAW DICTIONARY 837–38 (9th ed. 2009) (defining "indemnity clause").

**15.** Dr. Blaisdell's brief notes that "injury or death" in section 78B–6–707 might refer only to personal injury. We do not reach this issue.

**16.** RESTATEMENT (SECOND) OF TORTS § 402A cmt. m (1965).

**17.** 2003 UT 43, 79 P.3d 922.

**18.** *Id.* ¶ 16.

**19.** UTAH CODE § 70A–2–719(1)(a).

**20.** *Interwest Constr. v. Palmer,* 923 P.2d 1350, 1356 (Utah 1996) (alteration in original) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 195(3) (1981)).

**21.** RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 21 cmt. f (1998).

claims. The court determined that the licensing agreement was not unconscionable and that the remedy provisions did not fail in their essential purpose. The court also noted that the "matter involves a transaction between sophisticated business entities," that Dr. Blaisdell does "not dispute that the licensing agreement contains the conspicuous disclaimers and remedy limitations discussed by Dentrix" and was "well aware of the potential for data loss with the installation of Dentrix's software," concluding that "the licensing agreement adequately allocated the risk of data loss to the party with the best ability to prevent such a loss." Dr. Blaisdell has not appealed these rulings. We therefore conclude that the limitation of liabilities clause applies to Dr. Blaisdell's strict products liabilities claim.

## III. THE RECORD SUPPORTS SUMMARY JUDGMENT FOR DENTRIX ON DR. BLAISDELL'S GROSS NEGLIGENCE CLAIM

■ ¶ 14 Dr. Blaisdell argues that the limitation of liabilities clause cannot shield Dentrix to the extent it was grossly negligent.[22] Dr. Blaisdell's complaint does not separately caption a cause of action for gross negligence, but does allege that "Dentrix's breaches of its duty of care were willful and wanton, and committed with a reckless disregard for Plaintiff's rights" in its ordinary negligence cause of action. Gross negligence is "the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[23] Dr. Blaisdell contends that although a gross negligence claim imposes a heavy burden of proof on the

plaintiff, summary judgment is inappropriate on the issue of gross negligence unless there is a "standard of care ... fixed by law."[24] The cases Dr. Blaisdell cites for this proposition involve plaintiffs who incurred personal injuries from a ski resort and a bobsled ride operator, activities where "the finder of fact would likely need to hear testimony from expert witnesses before it could determine the operator's deviation from the standard."[25]

■ ¶ 15 But Dr. Blaisdell's claim is less complicated. "[S]ummary judgment is generally inappropriate to resolve negligence claims and should be employed only in the most clear-cut case."[26] Here, it is undisputed that Dentrix warned Dr. Blaisdell to back up his data. In fact, before Dr. Blaisdell's employee began installing the G2 Upgrade, the Dentrix technical support employee asked for and received oral confirmation from Dr. Blaisdell's employee that the office had a current backup. Dentrix apparently relied on this confirmation, which, if true, would have ensured that no data was lost.

¶ 16 In another case concerning data loss, the Fifth Circuit affirmed a grant of summary judgment for the defendant on a gross negligence claim.[27] In that case, a medical clinic had contracted with Wang Laboratories to repair its computer. Wang Laboratories created backups of the data before conducting the repairs. When Wang Laboratories attempted to transfer the backup data back onto the hard drive, one disk essential to the entire backup system did not copy. The clinic presented an affidavit from its expert.

**22.** *See Hawkins ex rel. Hawkins v. Peart*, 2001 UT 94, ¶ 9, 37 P.3d 1062.

**23.** *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 26, 171 P.3d 442 (internal quotation marks omitted); *cf. Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1130–31 (10th Cir.2009) ("[A]ppeals courts have affirmed grants of summary judgment on gross negligence claims where the undisputed evidence showed that the defendants took precautionary measures and did not ignore known and obvious risks.").

**24.** *Berry*, 2007 UT 87, ¶ 30, 171 P.3d 442 (internal quotation marks omitted). *But cf. Milne*,

575 F.3d at 1126–29 (applying federal standard instead of Utah's requirement that there be a standard of care fixed by law for summary judgment).

**25.** *Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶ 26 n. 2, 179 P.3d 760 (bobsled); *see also Berry*, 2007 UT 87, ¶¶ 28–30, 171 P.3d 442 (ski resort).

**26.** *Berry*, 2007 UT 87, ¶ 27, 171 P.3d 442 (internal quotation marks omitted).

**27.** *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 222 (5th Cir.1991).

[The expert] alleg[ed] that Wang was grossly negligent in using the last back-up copy while attempting repairs to the machine and in failing to make a sufficient number of copies, to test and verify the computer before back-ups were performed, and to print the data before attempting to reformat or copy the last data.[28]

The district court determined "that reasonable minds could not differ as to whether Wang's personnel's conduct was grossly negligent. Clearly gross negligence has not been exhibited by the defendant's personnel."[29] The Fifth Circuit affirmed, explaining that gross negligence, which is associated with " 'willful,' 'wanton,' and 'reckless' " conduct, applies to conduct that is "so far from a proper state of mind that it is treated in many respects as if harm was intended" and "usually is accompanied by a conscious indifference to consequences."[30] The appellate court affirmed summary judgment for the defendant company, noting that although the plaintiff "sufficiently demonstrated that issues of material fact may exist regarding its ordinary negligence claim," the defendant was entitled to summary judgment on the gross negligence claim.[31]

¶ 17 Dentrix exercised more care in preserving client data than Wang Laboratories. Part of Dentrix's update procedure was to request confirmation that Dr. Blaisdell had a backup copy of the data. Dr. Blaisdell's employee confirmed that a backup was available; had the backup system been functioning properly, the data would not have been lost. It cannot be reasonably asserted that Dentrix "show[ed] utter indifference" to the possibility that the G2 Upgrade could erase the data.

## CONCLUSION

¶ 18 The limitation of liabilities clause in the contract between Dr. Blaisdell and Dentrix is enforceable and precludes the remedy Dr. Blaisdell seeks in this case. We affirm the district court's grant of summary judgment.

---

**28.** *Id.* at 223.

**29.** *Id.* at 223 n. 3 (internal quotation marks omitted).

Associate Chief Justice NEHRING authored the opinion of the Court, in which Chief Justice DURRANT, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

---

**30.** *Id.* (internal quotation marks omitted).

