**2016 UT App 154**

## THE UTAH COURT OF APPEALS

LISA PENUNURI AND BARRY SIEGWART,
Appellants,
*v.*
SUNDANCE PARTNERS LTD., SUNDANCE HOLDINGS LLC, SUNDANCE
DEVELOPMENT CORPORATION, ROBERT REDFORD, REDFORD 1970
TRUST, AND ROCKY MOUNTAIN OUTFITTERS LC,
Appellees.

Opinion
No. 20140854-CA
Filed July 21, 2016

Fourth District Court, Provo Department
The Honorable Claudia Laycock
No. 080400019

Robert D. Strieper, Attorney for Appellants

H. Burt Ringwood and A. Joseph Sano, Attorneys
for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

VOROS, Judge:

¶1    Plaintiffs Lisa Penunuri and Barry Siegwart appeal the
district court's entry of summary judgment in favor of Rocky
Mountain Outfitters LC and the other defendants (collectively,
Rocky Mountain). Penunuri suffered injuries when she fell from
her horse on a guided trail ride. On that ride, potentially
dangerous gaps formed between horses. Rather than addressing

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

these gaps immediately, the trail guide decided to deal with them after the company had passed some hikers and reached a clearing. But before they did, Penunuri fell off her horse. Plaintiffs sued Rocky Mountain and related parties for ordinary negligence and gross negligence.

¶2    The district court ruled that a release signed by Penunuri barred the ordinary negligence claim. This court and the Utah Supreme Court upheld that ruling in a prior appeal. On remand, the district court rejected the gross negligence claim on summary judgment. We agree with the district court that this set of facts cannot as a matter of law support a claim of gross negligence. Accordingly, we affirm.


BACKGROUND[2]

¶3    On August 1, 2007, Penunuri joined a guided horseback trail ride operated by Rocky Mountain at Sundance Resort. Her group consisted of a guide and four other riders: Penunuri's two friends, an eight-year-old child (Child), and Child's mother (Mother). Before beginning the ride, Penunuri and the other riders received instruction from the guide and signed liability releases. The guide worked as a horseback trail guide for Rocky Mountain from summer 2004 to fall 2008. She was trained by Rocky Mountain at the beginning of each season to guide horseback trail rides. Rocky Mountain instructed guides to close up large gaps between horses as they walked and to warn riders about hazards on the trail.

---

2. When reviewing a district court's rulings on a summary judgment motion, we recite the facts and inferences in the light most favorable to the nonmoving party. *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439.

¶4    The riders left the stables riding single file. Throughout the ride, the guide rode at the head of the group. For the first 45 minutes, Mother, Child, and Penunuri were the first three riders, followed by Penunuri's friends. After stopping at a meadow, the order of the riders changed. Penunuri's friends rode behind the guide, while Mother, Child, and Penunuri brought up the rear. Both Child and Penunuri struggled to keep their horses from grazing. The grazing caused Child's and Penunuri's horses to lag behind, creating gaps between the horses.

¶5    The guide tried to keep the group together by slowing down. One of Penunuri's friends asked the guide to stop and wait for Child and Penunuri to catch up. The guide responded that they would be stopping at a clearing about 100 feet away so that she could take the reins of Child's horse. To reach the clearing, the horses had to climb a steep section of the trail around a bend where hikers were present. Child's horse again stopped to graze, creating a gap of several feet between Penunuri and the rest of the group. When Child's and Penunuri's horses began moving again, Penunuri testified that "it was a rougher ride than [she] remember[ed] having had before." She testified that "with other grazing episodes my horse would, you know, kind of giddyup a little faster than it had been going, because [Child's] horse would start up and then mine would start up, too, and then would slow down. And this particular incident, it seemed even rougher than, you know, the giddyup that I had gotten in other stops." Her horse suddenly accelerated and Penunuri fell off, suffering injuries.

¶6    Plaintiffs sued Rocky Mountain alleging ordinary negligence, gross negligence, and vicarious liability. Plaintiffs filed a motion for partial summary judgment and declaratory relief. They argued that a release Penunuri had signed was unenforceable under the Limitations on Liability for Equine and Livestock Activities Act. The district court concluded that the Act did not prevent a party from contracting away its liability

for ordinary negligence. The court accordingly ruled the release enforceable and dismissed all of Plaintiffs' claims based on ordinary negligence. This court and the Utah Supreme Court affirmed the district court's ruling. *See Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, 301 P.3d 984; *Penunuri v. Sundance Partners, Ltd.*, 2011 UT App 183, 257 P.3d 1049.

¶7     On remand, Plaintiffs pursued their gross negligence claim. Rocky Mountain filed two motions for summary judgment, the first to dismiss Plaintiffs' gross negligence claim and the second, in the alternative, to exclude Plaintiffs' proposed expert witness. The court granted both motions, dismissing the gross negligence claim and ruling that Plaintiffs' proposed expert was "not qualified to render expert opinion testimony concerning the standard of care applicable to commercial horseback trail guiding." The court also awarded Rocky Mountain costs pursuant to rule 54 of the Utah Rules of Civil Procedure. Plaintiffs appeal.

ISSUES ON APPEAL

¶8     First, Plaintiffs contend that the district court erred when it granted summary judgment to Rocky Mountain in a gross negligence case where the standard of care was not fixed by law.

¶9     Second, Plaintiffs contend that the district court erred when it determined that no facts supported their claims of gross negligence.

¶10    Third, Plaintiffs contend that the district court "erred when it determined the outcome of the entire case based upon one alleged, disputable fact."

¶11    Fourth, Plaintiffs contend that the district court erred when it "granted [Rocky Mountain's] motion for summary

judgment on causation based upon mischaracterization of deposition testimony."

¶12    Fifth, Plaintiffs contend that the district court erred when it granted Rocky Mountain's alternative motion for summary judgment and excluded testimony from Plaintiffs' proposed expert witness. Because our resolution of Plaintiffs' first four claims on appeal renders this claim moot, we do not consider its merits.

¶13    Finally, Plaintiffs contend that the district court abused its discretion when it awarded Rocky Mountain costs.


ANALYSIS

I. The District Court Properly Granted Rocky Mountain's
Summary Judgment Motion Relating to Gross Negligence.

¶14    Plaintiffs' first four contentions each challenge the district court's granting of Rocky Mountain's first motion for summary judgment. The district court granted the motion on the ground that Plaintiffs "presented no evidence upon which reasonable minds could conclude that [Rocky Mountain's] guide . . . exercised no care."

¶15    Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). "[B]ecause negligence cases often require the drawing of inferences from the facts, which is properly done by juries rather than judges,

summary judgment is appropriate in negligence cases only in the clearest instances." *Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 7, 321 P.3d 218 (citation and internal quotation marks omitted).

¶16    "Gross negligence is 'the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'" *Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶ 24, 179 P.3d 760 (quoting *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 26, 171 P.3d 442). Further, "gross negligence, which is associated with willful, wanton, and reckless conduct, applies to conduct that is so far from a proper state of mind that it is treated in many respects as if harm was intended and usually is accompanied by a conscious indifference to consequences." *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 16, 284 P.3d 616 (citation and internal quotation marks omitted).

¶17    First, Plaintiffs contend that the district court erred when it granted summary judgment to Rocky Mountain in a gross negligence case where the standard of care was not fixed by law. They argue that the "standard of care regarding how a guide manages gaps in the train of horses is not fixed by law" and that it was therefore "inappropriate for the [district] court to grant the summary judgment motion."

¶18    Plaintiffs rely on the Utah Supreme Court's opinions in *Berry v. Greater Park City Co.*, 2007 UT 87, 171 P.3d 442, and *Pearce v. Utah Athletic Foundation*, 2008 UT 13, 179 P.3d 760. The *Berry* court stated a two-part guideline for summary judgment in negligence cases:

> [S]ummary judgment is "'inappropriate unless the applicable standard of care is fixed by law, and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances.'"

*Berry*, 2007 UT 87, ¶ 27 (quoting *White v. Deseelhorst*, 879 P.2d 1371, 1374 (Utah 1994) (quoting *Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 825 (Utah Ct. App. 1989))). Plaintiffs read this passage to mean that summary judgment may never be granted in negligence cases unless *both* the standard of care is "fixed by law" *and* reasonable minds could not differ as to the defendant's negligence. And to be sure, the passage does describe the two elements in the conjunctive.

¶19　But that is not how our supreme court has read *Berry*. Utah courts grant summary judgment with some frequency in negligence cases—usually against the plaintiff—where the standard of care is not "fixed by law" in the sense that the defendant violated a statute or precedent specific to the industry or practice at issue. And our supreme court, citing *Berry*, did that very thing in *Blaisdell v. Dentrix Dental Systems, Inc.*, 2012 UT 37, 284 P.3d 616.

¶20　In *Blaisdell*, a dentist sued a software provider for gross negligence. *Id*. ¶ 2. The court affirmed the district court's grant of summary judgment in favor of the defendant. The plaintiff argued on appeal, quoting *Berry*, that "summary judgment is inappropriate on the issue of gross negligence unless there is a 'standard of care . . . fixed by law.'" *Id.* ¶ 14 (quoting *Berry*, 2007 UT 87, ¶ 30). But the court, also citing *Berry*, disposed of the claim under the rule that summary judgment "is generally inappropriate to resolve negligence claims and should be employed only in the most clear-cut case." *Id.* ¶ 15 (quoting *Berry*, 2007 UT 87, ¶ 27). And despite the absence of any law fixing the standard of care for providers of dental practice management software, the supreme court affirmed on the ground that reasonable minds could not differ as to whether the defendant's conduct in that case was grossly negligent (it wasn't). *Id.* ¶ 16. In other words, the supreme court read the *Berry* test as if the two factors were disjunctive rather than conjunctive elements.

¶21    We conclude that the supreme court's application of the two-part test in *Blaisdell* represents the original and best reading of that test. The two-part test came to Utah via *Wycalis v. Guardian Title of Utah*, 780 P.2d 821 (Utah Ct. App. 1989). *Wycalis* stated the test this way:

> Accordingly, summary judgment is inappropriate unless the applicable standard of care is "fixed by law," and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances.

*Id.* at 825 (quoting *Elmer v. Vanderford*, 445 P.2d 612, 614 (Wash. 1968)). But *Elmer v. Vanderford*, the source of the "fixed by law" formulation, states the test in the disjunctive. It identifies "two classes of cases in which the question of negligence may be determined by the court as a conclusion of law." *Elmer*, 445 P.2d at 614 (citation and internal quotation marks omitted). In the first class of cases, "the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances." *Id.* (citation and internal quotation marks omitted). In the second, "the facts are undisputed and but one reasonable inference can be drawn from them." *Id.* (citation and internal quotation marks omitted). In effect, this is an alternative formulation of our rule 56. *See* Utah R. Civ. P. 56.

¶22    Thus, both as originally promulgated and as actually employed by our supreme court, under the fixed-by-law formulation a district court must grant summary judgment if, based on undisputed facts and under the governing legal standard, reasonable minds could not differ as to whether the defendant acted negligently. In any event, we look to the governing standard in rule 56: "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* And that is the case here.

¶23 Consequently, we hold that *Berry* did not require the district court to deny Rocky Mountain's summary judgment motion on the ground that the standard of care governing "how a guide manages gaps in the train of horses" on commercial trail rides is not fixed by law. The district court handled the gross negligence claim here just as the supreme court handled the gross negligence claim in *Blaisdell*.

¶24 Second, Plaintiffs contend that the district court "erred when it determined there were no facts to support [Plaintiffs'] gross negligence claim." Specifically, Plaintiffs argue that the court "chose to ignore [Rocky Mountain's] employee manual," which instructed its guides to "keep gaps from forming, warn of obstacles such as hills and hikers, and keep the saddle from slipping."

¶25 The district court ruled that Plaintiffs "presented no evidence upon which reasonable minds could conclude that [Rocky Mountain's] guide . . . exercised no care." It further ruled that Plaintiffs did not present "any evidence to show that [the guide] knew or had reason to know of facts that would have created a high risk of physical harm to . . . Penunuri, but deliberately proceeded to act, or failed to act, in conscious disregard of, or indifference to, that risk." And, the court concluded, without any evidence of the guide's gross negligence—in other words, without any evidence that she acted with "utter indifference" to Penunuri's safety during the horseback ride—"reasonable minds could reach but one conclusion": that the guide was not grossly negligent. *See Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶ 24, 179 P.3d 760 (citation and internal quotation marks omitted).

¶26 As previously explained, "[g]ross negligence requires proof of conduct substantially more distant from the appropriate standard of care than does ordinary negligence." *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 26, 171 P.3d 442. It "is 'the failure to

observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'" *Pearce*, 2008 UT 13, ¶ 24 (quoting *Berry*, 2007 UT 87, ¶ 26). Therefore, for Plaintiffs' claim to survive Rocky Mountain's summary judgment motion, the facts had to be capable of supporting a finding that Rocky Mountain's guide failed "to observe even slight care" and acted with "utter indifference to the consequences that may result." *Id.* (citation and internal quotation marks omitted).

¶27 Plaintiffs argue that Rocky Mountain's employee manual's warning about gaps as well as testimony from Rocky Mountain employees about the potential problems when gaps form "should have created a rebuttable presumption of negligence." Plaintiffs do not support this argument with legal authority stating that internal training manuals may define a standard of care.[3] But even if that assertion were true, it is not relevant. Plaintiffs cannot succeed by showing that the evidence would support a finding of *ordinary negligence*; their claim alleges *gross negligence*. And even they do not contend that the manual demonstrates that the guide exercised no care and acted with utter indifference to the consequences of her actions.

¶28 Furthermore, we agree with the district court that, even resolving all inferences in Plaintiffs' favor, the evidence could not support a finding of gross negligence. On the contrary, the facts indisputably show that the guide did observe, at the very least, slight care: she gave Penunuri instructions on how to mount the horse and how to stop the horse from grazing, she had been "slowing down the whole ride" for Penunuri and Child, and she planned to take the reins of Child's horse once the riders reached a suitable area to rearrange the order of the riders. In addition, Plaintiffs' own proposed expert "testified that there

---

3. We express no opinion on this unbriefed question.

is no evidence in this case indicating that [Rocky Mountain's] guide . . . exercised no care or acted in willful disregard for the care of others."[4] In sum, the undisputed evidence before the court could not sustain a jury finding of gross negligence.

¶29　Third, Plaintiffs contend that the district court "erred when it determined the outcome of the entire case based upon one alleged, disputable fact." Plaintiffs argue that the district court granted Rocky Mountain's motion for summary judgment based on the "guide's testimony that she was slowing down the entire ride." Plaintiffs further argue that the guide's "failure to stop the moment she came upon the hikers to close the gaps that had formed" breached the standard of care.

¶30　We do not read the district court's ruling so narrowly. True, the court prominently cited the guide's testimony that she "had been slowing down the whole ride." But the court also cited the fact that the guide "was attempting to get the group to a larger clearing" to take the reins of Child's horse, as well as Plaintiffs' own proposed expert's testimony that the guide had not "exercised no care."

¶31　Moreover, we agree with the district court's characterization of the guide's testimony as undisputed. The guide testified, "I had been slowing down the whole ride." Plaintiffs argue that this testimony "is fully contradicted by the facts that the trial court disregarded." Plaintiffs refer to testimony that the guide "just march[ed] on at a normal speed" and did not stop when requested. But the page of the record Plaintiffs cite in support of this assertion does not support it. The witness testified as follows: "I told [the guide] that we had to

---

4. Solely for purposes of analyzing the summary judgment motion on gross negligence, we assume that the opinion testimony of Plaintiffs' proposed expert witness was admissible.

wait up, to stop. And she said that we would stop at the clearing farther on and that she would pony [Child] in." This testimony does not contradict the guide's testimony that she had been slowing down the whole ride. Accordingly, the court's summary judgment does not rest on a single disputed fact.

¶32  In addition, Plaintiffs cite other testimony from which they allege that a finder of fact could conclude that the guide knew the potential danger of gaps between horses, knew that gaps had formed in this company, and decided to close those gaps only after the group got past the foot traffic and bends in the trail. But, as explained above, this testimony would at most support a claim for ordinary negligence. Even assuming the truth of all the evidence on which Plaintiffs rely, it does not support a claim of gross negligence.

¶33  Finally, Plaintiffs contend that the district court "erred when it granted [Rocky Mountain's] motion for summary judgment on causation based upon mischaracterization of deposition testimony." Plaintiffs' proposed expert testified that "several things could have startled that horse and caused it to start running"; he also testified that if there had not been a gap between the horses, "all of those causes could have been minimalized." He testified that "there should have been extra care taken to get the horses together." The court ruled that summary judgment was appropriate because Plaintiffs "presented no evidence beyond speculation concerning causation."

¶34  Plaintiffs argue that the court ignored the expert's testimony that the danger could have been lessened or eliminated if the gaps had been closed between the horses. We do not agree with Plaintiffs' characterization of the district court's assessment of the causation evidence. But even if the district court erroneously concluded that the evidence could not support a finding of causation, the outcome of this case would

be the same, because, as explained above, we agree with the district court that evidence of gross negligence is lacking here.

¶35    For the foregoing reasons, the district court did not err in granting Rocky Mountain's summary judgment motion on the gross negligence claim. And because we conclude that the undisputed facts support summary judgment for Rocky Mountain even assuming the admissibility of the testimony of Plaintiffs' proposed expert, we need not address Plaintiffs' challenge to the district court's exclusion of that witness.

## II. The District Court Did Not Abuse Its Discretion When It Awarded Deposition Costs to Rocky Mountain.

¶36    Plaintiffs contend that the district court "erred when it determined that Rocky Mountain was entitled to the deposition costs in the amount of $2,577.32, together with post-judgment interest, when the same evidence could have been obtained through less expensive means." "In reviewing a district court's denial or award of costs, we apply a highly deferential standard." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 84, 201 P.3d 966. In *Giusti*, the supreme court concluded that because the trial court "applied the correct standard" and "gave a legitimate reason for its decision," it "did not abuse its discretion." *Id.* ¶ 86.

¶37    Under rule 54(d) of the Utah Rules of Civil Procedure, "[u]nless a statute, these rules, or a court provides otherwise, costs should be allowed to the prevailing party." Utah R. Civ. P. 54(d)(1). "The general rule regarding the recovery of deposition costs is that a party may recover deposition costs as long as the trial court is persuaded that [the depositions] were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case." *Young v. State*, 2000 UT 91, ¶ 6, 16 P.3d 549 (alteration in original) (citation and internal quotation marks omitted). The district court "must find that the depositions were essential because they were used in a meaningful way at trial, or because the

development of the case was of such a complex nature that the information in the depositions could not be obtained through less expensive means of discovery." *Id.* ¶ 11.

¶38 Plaintiffs argue that the costs for the depositions of Penunuri, Mother, and one of Penunuri's friends (Friend) "were not necessary and the information in the Motion for Summary Judgment certainly could have been obtained through less expensive means." However, the district court did not decide that the depositions were essential "because the development of the case was of such a complex nature that the information in the depositions could not be obtained through less expensive means of discovery." *See id.* In fact, the court stated, "I haven't really reached a conclusion as to whether or not this case was of such a complex nature that . . . less expensive discovery could have been obtained."

¶39 Instead, the court considered whether the depositions were used "in a meaningful way" in resolving the case through summary judgment.[5] The court, in considering Penunuri's deposition, found that "her deposition was used in a very meaningful way in establishing the undisputed facts for the purpose of the motion for summary judgment." The court further stated, "I'm finding and ruling that whether or not it was complex, this was discovery that had to be done with Ms. Penunuri, through a deposition." The court similarly found that both Mother's and Friend's depositions were "used in a significant way and a meaningful way . . . in the motion for summary judgment." The court additionally found that depositions were required to obtain Mother's and Friend's testimony, as "lesser means of discovery were either not

---

5. Plaintiffs do not argue that the district court could not analyze whether the depositions were essential under the "used in a meaningful way" prong.

available or not accurate and . . . through their deposition[s], they were able to clear up issues and facts."

¶40 The district court also found that Penunuri's, Mother's, and Friend's depositions "were taken in good faith" and that they "appeared to be essential for the development and presentation of the case because they were "used in a meaningful way" in resolving the case. *See id.* ¶¶ 6, 11. Under our deferential standard, this is enough. We therefore conclude that the district court did not abuse its discretion in awarding Rocky Mountain costs for the depositions of Penunuri, Mother, and Friend.

CONCLUSION

¶41 The judgment of the district court is affirmed.

————