*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 54**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LISA PENUNURI,
and BARRY SIEGWART,
*Petitioners,*

*v.*

SUNDANCE PARTNERS, LTD.,
SUNDANCE HOLDINGS, LLC,
ROBERT REDFORD, ROBERT REDFORD 1970 TRUST,
and ROCKY MOUNTAIN OUTFITTERS, L.C.,
*Respondents.*

No. 20160683
Filed August 25, 2017

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable Claudia Laycock
No. 080400019

Attorneys:

Robert D. Strieper, Salt Lake City, for petitioners

H. Burt Ringwood, A. Joseph Sano, Salt Lake City, for respondents

Douglas B. Cannon, Salt Lake City, for amicus
Utah Association for Justice

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and
JUSTICE PEARCE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶ 1  This case returns to us for a second round of certiorari review. In August 2007, Lisa Penunuri was injured when she fell off her horse during a guided horseback trail ride at Sundance Resort.

She and her husband, Barry Siegwart,[1] asserted claims for negligence and gross negligence against Rocky Mountain Outfitters, L.C.—the company that provided the trail guide services—as well as various defendants associated with the resort (collectively, Sundance). In 2013, we affirmed the dismissal of Ms. Penunuri's ordinary negligence claims, leaving only her claims for gross negligence.[2] Now her gross negligence claims have met a similar fate. The district court granted summary judgment in favor of Sundance and awarded Sundance its costs, including certain deposition costs.

¶ 2   Ms. Penunuri appealed and the court of appeals affirmed the grant of summary judgment.[3] We granted certiorari on three questions: (1) whether the court of appeals erred in concluding that summary judgment may be granted on a gross negligence claim even though the standard of care is not "fixed by law," (2) whether the court of appeals erred in affirming the district court's conclusion that reasonable minds could only conclude there was no gross negligence under the circumstances of this case, and (3) whether the court of appeals erred in affirming the district court's award of deposition costs to Sundance. We affirm the court of appeals on each issue.

¶ 3   As to the first of these issues, we recognize and clarify some potential inconsistency in our caselaw. In *Berry v. Greater Park City Co.*, we stated that summary judgment dismissing a gross negligence claim is improper unless (1) the standard of care is "'fixed by law,' and [(2)] reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances."[4] We conclude, upon review, that the first prong of this standard—the requirement that the standard of care be "fixed by law"—is incompatible with rule 56 of the Utah Rules of Civil Procedure. We accordingly repudiate this requirement and clarify that it is no longer an independent prerequisite to the grant of summary judgment dismissing a gross negligence claim. Summary judgment is

---

[1] Because Ms. Penunuri and Mr. Siegwart have presented a single set of arguments on appeal, we refer to both plaintiffs collectively as simply "Ms. Penunuri."

[2] *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, 301 P.3d 984.

[3] *Penunuri v. Sundance Partners, Ltd.*, 2016 UT App 154, 380 P.3d 3.

[4] 2007 UT 87, ¶ 27, 171 P.3d 442 (quoting *White v. Deseelhorst*, 879 P.2d 1371, 1374 (Utah 1994)).

appropriate where reasonable minds could reach but one conclusion regarding the defendant's gross negligence under the circumstances, whether or not the standard of care is fixed by law.

¶ 4 We further conclude that the court of appeals correctly determined that reasonable minds could only conclude there was no gross negligence given the undisputed facts of this case. Finally, we affirm the court of appeals' conclusion that the district court did not abuse its discretion in awarding deposition costs to Sundance.

## Background[5]

¶ 5 Ms. Penunuri and two of her friends took a guided horseback trail ride at Sundance Resort in August 2007. The ride was guided by Ashley Wright, an employee of Rocky Mountain Outfitters, L.C., the entity authorized to operate trail rides at Sundance. Also present on this ride was another woman, Kate Fort, and her eight-year-old daughter, Haley. Before participating in the ride, Ms. Penunuri signed a Horseback Riding Release (Release), which advised of the risks associated with horseback riding:

> I, the undersigned, . . . understand that horseback riding . . . involve[s] SIGNIFICANT RISK OF SERIOUS PERSONAL INJURY, PROPERTY DAMAGE OR EVEN DEATH. The risks include NATURAL, MAN-MADE, ENVIRONMENTAL CONDITIONS AND INHERENT RISKS, including changing weather, mud, rocks, variations in steepness, terrain, natural and man-made obstacles, equipment failure and the negligence of others. "Inherent risk" with regard to equine or livestock activities means those dangers or conditions which are an integral part of equine or livestock activities, which may include: (a) the propensity of the animal to behave in ways that may result in injury, harm, or death to persons on or around them; (b) the unpredictability of the animal's reaction to outside stimulation such as sounds, sudden movement, and

---

[5] Because we are reviewing a district court's ruling on a motion for summary judgment, we present the facts and all reasonable inferences from them "in the light most favorable" to Ms. Penunuri, the non-moving party. *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.*, 844 P.2d 322, 324 & n.1 (Utah 1992).

unfamiliar objects, persons, or other animals; (c) collisions with other animals or objects; or (d) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability.

Sundance also posted signs warning of the inherent risks associated with horseback riding. These signs were located in the building where guests sign the Release and near the horse arena.

¶ 6   The group set out in the following order: the guide in front, followed by Haley, Kate, Ms. Penunuri, and then her two friends. About 45 minutes into the ride, they reached a meadow and rearranged the order of riders. The guide stayed in the lead, but she was now followed by Ms. Penunuri's friends, then Kate, then Haley, and finally Ms. Penunuri bringing up the rear. The guide testified that, in an effort to keep the group together, she had been "slowing down the whole ride."[6]

¶ 7   Although the guide instructed the riders on how to keep the horses from grazing, Ms. Penunuri and eight-year-old Haley experienced difficulty keeping their horses from doing so, which caused them to lag behind the train of riders. The guide then informed the group that they would be stopping at a clearing in 100 feet so she could go back and take the reins of Haley's horse the rest of the way. As the guide was in the process of turning around to go back to Haley's horse, Ms. Penunuri fell off the back of her horse and was injured.

¶ 8   Ms. Penunuri and her husband, Barry Siegwart, asserted claims against Sundance for ordinary and gross negligence. The district court dismissed the ordinary negligence claims on the basis that Ms. Penunuri had released Sundance from liability for ordinary

---

[6] Ms. Penunuri takes issue with this fact. She asserts that it "was not presented as an undisputed fact, but was made in response to one of Ms. Penunuri's undisputed facts." But we agree with the court of appeals that the guide did in fact testify as stated and that Ms. Penunuri has identified nothing in the record that would dispute the truth of that testimony. *See Penunuri v. Sundance Partners, Ltd.*, 2016 UT App 154, ¶ 31, 380 P.3d 3. So we treat this testimony as undisputed, as did the court of appeals and the district court.

negligence, a result that was affirmed on appeal and certiorari.[7] On remand, Sundance filed two motions for summary judgment on the gross negligence claim. In the first, it argued there was insufficient evidence to permit a reasonable fact finder to conclude (1) that Sundance was grossly negligent, or (2) that Sundance's gross negligence caused Ms. Penunuri's injuries. In the second motion, Sundance argued that Ms. Penunuri's expert witness lacked the qualifications necessary to provide expert testimony on the standard of care, and that without that testimony Ms. Penunuri lacked sufficient evidence of gross negligence to take her case to the jury.

¶ 9   The district court agreed on all counts. It ruled that no reasonable fact finder could conclude that the guide had shown "conscious disregard of, or indifference to" the safety of her riders. The court also concluded that Ms. Penunuri presented "no evidence beyond speculation concerning causation." It further concluded that, under rule 702 of the Utah Rules of Evidence, Ms. Penunuri's expert witness was unqualified to render expert opinion testimony on the standard of care, so summary judgment was proper on this alternative ground as well. Because Sundance prevailed on summary judgment, the district court awarded Sundance the costs associated with its deposing Ms. Penunuri, her expert, and two of the other riders, on the basis that the depositions were used in Sundance's summary judgment motion and were "necessary" to the development of the case.

¶ 10 The court of appeals affirmed. In so doing, it concluded that the following rule from our caselaw is best interpreted as a disjunctive test: "[S]ummary judgment is inappropriate unless the applicable standard of care is 'fixed by law,' and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances."[8] The court of appeals then went on to assess whether reasonable minds could reach but one conclusion as to the defendant's gross negligence in this case, without regard to whether the standard of care for guided horseback trail rides has been "fixed by law."[9] It agreed with the district court that reasonable

---

[7] *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, 301 P.3d 984; *Penunuri v. Sundance Partners, Ltd.*, 2011 UT App 183, 257 P.3d 1049.

[8] *Penunuri*, 2016 UT App 154, ¶¶ 20–21 (quoting *Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 825 (Utah Ct. App. 1989)).

[9] *Id.* ¶¶ 24–35.

minds could only conclude there was no gross negligence on these facts.[10] Finally, it affirmed the district court's decision to award deposition costs to Sundance.[11]

¶ 11 Ms. Penunuri petitioned for a writ of certiorari, which we granted. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶ 12 "When reviewing a case on certiorari, we review the court of appeals' decision for correctness. 'The correctness of the court of appeals' decision turns on whether that court correctly reviewed the [district] court's decision under the appropriate standard of review.'"[12] We address three issues in this case.

¶ 13 First, we must decide whether the court of appeals erred in concluding that the standard stated in *Berry v. Greater Park City Co.*[13] permits summary judgment solely on the ground that reasonable minds could not find for the plaintiff on a gross negligence claim, even where the standard of care is not fixed by law. The proper interpretation of our caselaw presents a question of law that an appellate court reviews for correctness.[14]

---

[10] *Id.* ¶ 28. The court of appeals reached this conclusion even assuming, "[s]olely for purposes of analyzing the summary judgment motion on gross negligence," that the "opinion testimony of [Ms. Penunuri's] proposed expert witness was admissible." *Id.* ¶ 28 n.4. It accordingly did not reach the alternative ground regarding the expert witness's credentials. *See id.* ¶ 35. The court of appeals intimated that it agreed with the district court on the merits of the causation issue, but ultimately concluded that, even if the district court erred in concluding "that the evidence could not support a finding of causation, the outcome of this case would be the same, because . . . evidence of gross negligence [was] lacking." *Id.* ¶ 34.

[11] *Id.* ¶¶ 36–40.

[12] *View Condo. Owners Ass'n v. MSICO, L.L.C.*, 2005 UT 91, ¶ 17, 127 P.3d 697 (citations omitted).

[13] 2007 UT 87, 171 P.3d 442.

[14] *State ex rel. Office of Recovery Servs. v. Streight ex rel. Jensen*, 2004 UT 88, ¶ 6, 108 P.3d 690 ("We consider the [lower] court's interpretation of binding case law as presenting a question of law

(Continued)

¶ 14 The second issue is whether the court of appeals erred in affirming the district court's conclusion that reasonable minds would necessarily conclude that there was no gross negligence under the circumstances of this case. Summary judgment is appropriate where "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[15] Appellate courts review a district court's "'legal conclusions and ultimate grant or denial of summary judgment' for correctness," viewing "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[16]

¶ 15 The third issue is whether the court of appeals erred in affirming the district court's award of deposition costs to Sundance. A district court's decision to "award the prevailing party its costs will be reviewed under an abuse of discretion standard."[17] But the proper standard to apply when determining whether to award deposition costs is a legal question that we review for correctness.[18]

## Analysis

¶ 16 We first address the proper standard for granting summary judgment dismissing a gross negligence claim. The court of appeals

---

and review [that] interpretation . . . for correctness." (citation omitted) (internal quotation marks omitted)).

[15] UTAH R. CIV. P. 56(a) (2016). At the time Sundance filed its motions for summary judgment, the operative provision of rule 56 was contained in subpart (c), which provided that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." UTAH R. CIV. P. 56(c) (2013). Because the 2015 amendments to rule 56 were adopted simply "to adopt the style of the Federal Rule of Civil Procedure 56 without changing the substantive Utah law" of summary judgment, we refer to the most recent version throughout this opinion. UTAH R. CIV. P. 56 (2016) advisory committee's note to 2015 amendment.

[16] *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations omitted).

[17] *Jensen v. Sawyers*, 2005 UT 81, ¶ 140, 130 P.3d 325 (citation omitted).

[18] *See Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980).

concluded that the standard stated in *Berry v. Greater Park City Co.*[19] permits a court to grant summary judgment where reasonable minds could reach but one conclusion on a gross negligence claim, even where the standard of care is not fixed by law. Although this conclusion may appear at odds with some of our cases, we agree with the court of appeals that this is the proper approach. We accordingly repudiate those portions of our previous cases that are inconsistent with our decision today. We clarify that summary judgment dismissing a gross negligence claim is appropriate where reasonable minds could only conclude that the defendant was not grossly negligent under the circumstances, regardless of whether the standard of care is fixed by law.

¶ 17 We then turn to the second issue—what reasonable minds would make of Ms. Penunuri's gross negligence claim. We affirm the court of appeals' conclusion that reasonable minds could only conclude that there has been no gross negligence on the facts of this case.

¶ 18 Finally, we assess whether the district court properly awarded certain deposition costs to Sundance. We conclude that the district court did not err in awarding these costs. In so doing, we clarify that a district court may award deposition costs so long as the depositions "were taken in good faith and appear to be essential for the development and presentation of the case."[20]

### I. The Proper Standard for Granting Summary Judgment Dismissing a Gross Negligence Claim

¶ 19 We first assess whether a district court may grant summary judgment dismissing a gross negligence claim where the standard of care is not "fixed by law." We begin by discussing three of our cases that are in apparent tension: *Berry v. Greater Park City Co.*,[21] *Pearce v. Utah Athletic Foundation*,[22] and *Blaisdell v. Dentrix Dental Systems, Inc.*[23]

¶ 20 The first two, *Berry* and *Pearce*, apply a conjunctive test. In those cases, we held that summary judgment dismissing a

---

[19] 2007 UT 87, 171 P.3d 442.

[20] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 80, 201 P.3d 966.

[21] 2007 UT 87, 171 P.3d 442.

[22] 2008 UT 13, 179 P.3d 760.

[23] 2012 UT 37, 284 P.3d 616.

negligence or gross negligence claim is improper unless both (1) the standard of care is "fixed by law" *and* (2) "reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances."[24] But in the third, *Blaisdell*, we implicitly treated these two prongs as disjunctive, affirming summary judgment because reasonable minds could reach only one conclusion—no gross negligence—even though the standard of care was not fixed by law.[25]

¶ 21 We now describe these cases in some detail, and in so doing, acknowledge the apparent inconsistency among them. We then clarify the correct standard, which does not include the prerequisite to granting summary judgment, described in *Berry* and *Pearce*, that the standard of care be "fixed by law."

*A. Our Cases Are Inconsistent Regarding the "Fixed by Law" Requirement*

¶ 22 We begin with *Berry v. Greater Park City Co.*[26] In *Berry*, a skier who was paralyzed in a fall during a skiercross race sued the organizers of the race, asserting, among other claims, a claim for gross negligence.[27] The district court granted the organizers' motion for summary judgment.[28] On appeal, the organizers defended that grant of summary judgment, arguing that no reasonable fact finder could reach a conclusion of gross negligence on the facts of that case because "evidence that would be adequate to take an ordinary negligence case to a jury cannot withstand uncontroverted evidence that [the organizers] exercised enough care to avoid a finding of gross negligence."[29] We rejected this argument. Noting that the parties had not pointed us to "a location in the record where the appropriate standard of care applicable to the design and construction of skiercross courses appears," we said that we were without a "necessary precondition" to be able to assess "the degree to which conduct deviates, if at all, from the standard of care."[30] We

---

[24] *Berry*, 2007 UT 87, ¶¶ 27–30; *Pearce*, 2008 UT 13, ¶ 26 & n.2.

[25] 2012 UT 37, ¶¶ 14, 17.

[26] 2007 UT 87.

[27] *Id.* ¶ 1.

[28] *Id.*

[29] *Id.* ¶ 29.

[30] *Id.* ¶ 30.

accordingly held that the district court erred in granting summary judgment.

¶ 23 In *Pearce v. Utah Athletic Foundation*, the plaintiff injured his back on a public bobsled ride.[31] The district court granted summary judgment to the owner and operator of the bobsled track on the plaintiff's gross negligence claim.[32] But we disagreed, concluding that summary judgment was improper because, like *Berry*, no standard of care for the pertinent activity was "fixed by law."[33] In other words, because the law did not establish "specific standards for designing, constructing, and testing a bobsled run for the public or for operating a public bobsled ride," summary judgment on the plaintiff's gross negligence claim was improper.[34]

¶ 24 *Berry* and *Pearce* thus employed a conjunctive test, in that we required both prongs to be met for summary judgment to be proper. Without assessing whether reasonable minds could disagree about the defendant's negligence, we concluded that summary judgment was improper because the standard of care was not "fixed by law."

¶ 25 We took a different approach in *Blaisdell v. Dentrix Dental Systems*, where a software update irretrievably destroyed a dentist's electronically stored patient files and related information.[35] Although the dentist's employee had assured the software company's representative that the data was backed up, it had not been, and the update wiped the dentist's data.[36] The dentist sued the software company for, among other claims, gross negligence.[37] The district court granted summary judgment in favor of the software company, and Dr. Blaisdell appealed, arguing, among other things, that summary judgment on the gross negligence claim was inappropriate under *Berry* and *Pearce* because there was no standard of care fixed by law.[38]

---

[31] 2008 UT 13, ¶ 1.

[32] *Id.*

[33] *Id.* ¶ 26.

[34] *Id.* ¶ 26 n.2.

[35] 2012 UT 37.

[36] *Id.* ¶¶ 3–4.

[37] *Id.* ¶ 14.

[38] *Id.*

¶ 26 But we rejected that argument and held that summary judgment was appropriate, despite the absence of any standard of care fixed by law. We distinguished *Berry* and *Pearce* on the grounds that those cases involved "activities where 'the finder of fact would likely need to hear testimony from expert witnesses before it could determine the operator's deviation from the standard.'"[39] Because "Dr. Blaisdell's claim [was] less complicated," we determined we could assess the gross negligence question as a matter of law.[40] We concluded that "[i]t cannot be reasonably asserted that" the software company "show[ed] utter indifference" to the possibility that harm might follow from its conduct, and so we affirmed the grant of summary judgment.[41]

¶ 27 In sum, *Berry* and *Pearce* clearly articulated a "fixed by law" prerequisite to the grant of summary judgment. But *Blaisdell* determined that this prerequisite did not apply, so summary judgment was appropriate despite the absence of a standard of care fixed by law. We next explain why we now decide to repudiate the "fixed by law" requirement.

*B. We Abandon the Holdings of* Berry *and* Pearce *to the Extent They Suggest There Is an Independent Prerequisite that the Standard of Care Be "Fixed by Law" Before Summary Judgment May Be Granted*

¶ 28 Rather than distinguishing *Berry* and *Pearce*, as we did in *Blaisdell*, we now repudiate their holdings indicating that there is a prerequisite that the standard of care be "fixed by law" before the court may grant summary judgment. We do so for two reasons. First, the cases that articulated this prerequisite are inconsistent with the precedent on which they rely. Second, treating "fixed by law" as a prerequisite to summary judgment is at odds with rule 56 of the Utah Rules of Civil Procedure.

¶ 29 As the court of appeals correctly recognized in its opinion in this case below, *Berry*'s special rule for summary judgment on gross negligence claims cannot be found in the cases that it relied on.[42] The court of appeals accurately traced the history of this rule back to

---

[39] *Id.* (citation omitted).

[40] *Id.* ¶ 15.

[41] *Id.* ¶ 17 (alteration in original).

[42] *Penunuri v. Sundance Partners, Ltd.*, 2016 UT App 154, ¶ 21, 380 P.3d 3.

earlier sources that reveal that it was originally a disjunctive statement. *Berry* cited *White v. Deseelhorst*,[43] which cited *Wycalis v. Guardian Title of Utah*,[44] which cited *Elmer v. Vanderford*.[45] The *Elmer* court held that summary judgment on negligence is proper in "two classes of cases": first, where "the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances" and second, "where the facts are undisputed and but one reasonable inference can be drawn from them."[46]

¶ 30 Despite these cited authorities' descriptions of "two classes of cases," the *Wycalis* court conflated the two *classes* of cases into two *requirements*.[47] We carried forward this conjunctive test in *White*, *Berry*, and *Pearce*. In the latter two cases specifically, we held that, unless the standard of care is "fixed by law," it matters not whether the district court is of the view that reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances.[48] Thus, our cases that have treated the "fixed by law" requirement as an independent prerequisite to summary judgment are inconsistent with the precedent on which they purported to rely.

¶ 31 Even more concerning, an independent "fixed by law" requirement is inconsistent with rule 56 of the Utah Rules of Civil Procedure. Under that rule, a "court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[49] A movant is entitled to judgment as a matter of law

---

[43] *See Berry*, 2007 UT 87, ¶ 27 (citing *White v. Deseelhorst*, 879 P.2d 1371 (Utah 1994)).

[44] *See White*, 879 P.2d at 1374 (citing *Wycalis v. Guardian Title of Utah*, 780 P.2d 821 (Utah Ct. App. 1989)).

[45] *See Wycalis*, 780 P.2d at 825 (citing *Elmer v. Vanderford*, 445 P.2d 612 (Wash. 1968)).

[46] *Elmer*, 445 P.2d at 614 (quoting *McQuillan v. City of Seattle*, 38 P. 1119, 1120 (Wash. 1895)).

[47] *Wycalis*, 780 P.2d at 825 ("Accordingly, summary judgment is inappropriate unless the applicable standard of care is 'fixed by law,' and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances." (citations omitted)).

[48] *See Berry*, 2007 UT 87, ¶ 30; *Pearce*, 2008 UT 13, ¶ 26 & n.2.

[49] UTAH R. CIV. P. 56(a).

when "no reasonable fact finder could" find in favor of the nonmoving party.[50] In other words, one function of summary judgment is to cut off evidence-deficient cases from going to trial. But the "fixed by law" requirement would carve out an exception and allow some of these cases to reach the jury.

¶ 32 Ms. Penunuri defends the "fixed by law" requirement, arguing that our caselaw creates two scenarios for gross negligence claims: First, if a plaintiff cannot produce evidence sufficient to survive summary judgment on even ordinary negligence, then summary judgment is appropriate regardless of whether the standard of care is fixed by law. But if the plaintiff has sufficient evidence to survive summary judgment on *ordinary* negligence, then she gets to the jury on the question of *gross* negligence, unless the standard of care is "fixed by law" and reasonable minds could reach but one conclusion as to the defendant's negligence.

¶ 33 The problem with this standard is that it would allow plaintiffs to get to the jury even when no reasonable jury could reach a conclusion of gross negligence. That is, even assuming the plaintiff would survive summary judgment on *ordinary* negligence, if the district court is convinced that no reasonable jury could conclude that *gross* negligence had occurred, a trial on the gross negligence claim would be futile and a waste of judicial resources. We see no reason to force the district court to let the evidence-deficient case go to the jury, where the only verdict it could render would be an unreasonable one. This result is flatly inconsistent with rule 56, under which a court must grant summary judgment "if 'reasonable minds cannot differ' as to the inferences to be drawn from the undisputed facts."[51]

¶ 34 In sum, consistent with *Blaisdell*, summary judgment may be appropriate on a gross negligence claim even if the standard of care is not fixed by law. The question for the district court is whether reasonable minds could not differ as to whether the defendant was grossly negligent under the circumstances. If they could not differ, then summary judgment is appropriate, whether or not the standard

---

[50] *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 15, 196 P.3d 588.

[51] *Colvin v. Giguere*, 2014 UT 23, ¶ 12, 330 P.3d 83 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)).

of care is fixed by law. We now proceed to apply that standard to the facts of this case.

## II. The District Court Correctly Determined that No Reasonable Fact Finder Could Conclude that the Trail Guide Was Grossly Negligent

¶ 35 Applying the above standard, we now assess whether the district court properly granted summary judgment in favor of Sundance on Ms. Penunuri's gross negligence claim. In Utah, gross negligence is "the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[52] Summary judgment is proper where "reasonable minds could reach only one conclusion based on the applicable material facts."[53] As discussed in the previous section, the combination of this substantive and procedural law is that the standard for granting summary judgment dismissing a gross negligence claim is whether, based on the undisputed material facts, reasonable minds could reach but one conclusion as to whether the defendant "observe[d] even slight care" and did not demonstrate "carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[54]

¶ 36 The district court granted summary judgment in favor of Sundance, concluding that

> [p]laintiffs have presented no evidence upon which reasonable minds could conclude that [Sundance's] guide . . . exercised no care. Nor have [p]laintiffs presented any evidence to show that [the guide] knew or had reason to know of facts that would have created a high degree of risk of physical harm to [Ms.] Penunuri, but deliberately proceeded to act, or failed to act, in conscious disregard of, or indifference to, that risk.[55]

---

[52] *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 14, 284 P.3d 616 (citation omitted).

[53] *Raab v. Utah Ry. Co.*, 2009 UT 61, ¶ 50, 221 P.3d 219; UTAH R. CIV. P. 56(a).

[54] *Blaisdell*, 2012 UT 37, ¶ 14 (citation omitted).

[55] Citing *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 42, 221 P.3d 256.

The court of appeals affirmed this conclusion, noting that "[e]ven assuming the truth of all the evidence on which [p]laintiffs rely, it does not support a claim of gross negligence."[56] We agree.[57]

¶ 37 The district court correctly recognized that Ms. Penunuri has not presented the essential evidence needed to survive a defendant's motion for summary judgment on a gross negligence claim: evidence that the defendant's conduct dramatically magnified the risk of harm to the plaintiff. To be sure, she has attempted to make this showing. She argues that "the guide had yearly training for six years in a row where she was taught and knew that large gaps [between the horses] . . . on the trail will cause horses to suddenly accelerate." She further argues that all of the witnesses familiar with guided horseback trail rides testified that gaps between the horses should ideally be less than four horse-lengths, or 32 feet. For purposes of its summary judgment motion, Sundance does not dispute that the gap between Ms. Penunuri and the next rider had increased to over 100 feet. Ms. Penunuri further asserts that, once the gaps between the riders' horses had increased to over 100 feet, the guide should have attempted to close the gaps by stopping and waiting for the riders to catch up, rather than by continuing on to the clearing in order to turn around so that she could go back to take the reins of the slowest horse. She also contends that the presence of additional "dangers" on this portion of the trail—a steep, upward bend and hikers in the brush on the side—made it particularly inappropriate for the guide to continue on to the clearing. In her view, given the guide's decision to press on to the clearing despite the gaps and these dangers, a reasonable fact finder could conclude that the guide acted with utter indifference to the consequences of her conduct and failed to show even slight care.

¶ 38 But there is no evidence from which a reasonable fact finder could reach such a conclusion. Instead, the undisputed evidence supports, at most, that the guide breached the standard of care by

---

[56] *Penunuri v. Sundance Partners, Ltd.*, 2016 UT App 154, ¶ 32, 380 P.3d 3.

[57] For purposes of this section, we assume, as did the court of appeals, that Ms. Penunuri's expert was qualified, and we even take his testimony into account in assessing whether a reasonable fact finder could conclude that the trail guide failed to show even slight care or acted with utter indifference to the consequences of her conduct.

proceeding onward to the clearing when the gaps in the horses had increased to over four horse-lengths. We can accept, for purposes of argument, that a jury would agree with Ms. Penunuri that the standard of care under the circumstances requires a guide to keep the gaps between horses within four horse-lengths. But a plaintiff asserting gross negligence must show more than a breach of the standard of care to survive an opponent's motion for summary judgment.[58] Instead, the plaintiff must point to evidence that the defendant's conduct exposed the plaintiff to a significantly elevated level of risk.[59] Ms. Penunuri has failed to point to evidence of the

---

[58] *See supra* Part I; UTAH R. CIV. P. 56(a); *see also Penunuri*, 2016 UT App 154, ¶ 32 (noting that Ms. Penunuri's evidence "would at most support a claim for ordinary negligence").

[59] We note that our cases have sometimes referred to gross negligence as encompassing a "conscious indifference" to the risk of harm to others, which could be taken to imply that a plaintiff must prove that a defendant acted with a certain mental state with respect to the risk created. *See, e.g., Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 16, 284 P.3d 616 (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 223 n.3 (5th Cir. 1991)). But we have also suggested that gross negligence can be shown even without a "knowing" state of mind. *See, e.g., Daniels,* 2009 UT 66, ¶ 44 ("While all gross negligence claimants can automatically claim recklessness, only some may be able to show that a tortfeasor actually knew of the danger of his or her action or inaction, as opposed to should have known of the danger."). Some jurisdictions have explicitly recognized that their law of gross negligence "consists of both objective and subjective elements," in that plaintiffs must prove "that 1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and 2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012); *see* 57A AM. JUR. 2d *Negligence* § 237 ("Some jurisdictions take the position that knowledge of the peril by the defendant is an essential element of gross negligence. Thus, gross negligence must be predicated on a showing of chargeable knowledge or awareness of the imminent danger spoken of."). But in other jurisdictions, "gross negligence does not require an actual or constructive consciousness of the danger involved as an essential ingredient of the act or omission."

(Continued)

differential between the risk associated with the guide's decision to proceed to the clearing, on the one hand, and the risk associated with taking some other action, such as stopping and waiting for the gaps to close, on the other. Without such evidence, there is nothing that would sustain a jury's finding that the guide's decision to proceed to the clearing significantly increased the risk of harm to the riders. Instead, the jury could only speculate on the key question of how much more dangerous it was for the guide (1) to allow the gaps to temporarily increase before permanently resolving them by ponying up the horse rather than (2) for the guide to have taken some other course of action—e.g., stopping and waiting for the gaps to close themselves. Ms. Penunuri needed to present evidence that the danger of a horse's sudden acceleration increases proportionally with the size of the gaps between the horses; otherwise, there is no indication that it is more dangerous for the guide to proceed ahead and temporarily increase the gaps than it is to sit and wait while gaps of more than 32 feet remain.[60] Rather than demonstrating that

---

57A AM. JUR. 2d *Negligence* § 234. In the parties' briefing before the district court, Ms. Penunuri appears to have conceded that in Utah gross negligence requires proof of a certain mental state with respect to the risk, and she did not argue that she had no obligation to prove that the guide acted with a particular mental state. Instead, in her memorandum in opposition to the defendant's motion for summary judgment, she stated: "Defendant Rocky Mountain Outfitters' employee manual established the 'knowingly' element to Plaintiff's claims of gross negligence against the Defendants," and "[i]n this case a jury certainly could find that [the guide] acted with knowledge and with total disregard for the safety of Ms. Penunuri . . . ."

In any event, because we conclude that Ms. Penunuri has not presented sufficient evidence for a reasonable jury to conclude that the guide's conduct involved a significantly elevated level of risk of harm to others, we need not revisit what subjective mental state, if any, need be proven with respect to that level of risk.

[60] Ms. Penunuri attempted to make this point by arguing that one of Rocky Mountain's guides, Braydon Whiteley, "testified that a gap of three to four horse lengths (32 feet) *may* likely cause [Rocky Mountain's] horse to run unexpectedly and a gap of ten horse lengths (80 feet) *will* cause [Rocky Mountain's] horses to accelerate unexpectedly." But Mr. Whiteley did not so testify. In fact, he testified as follows:

(Continued)

the level of risk increases proportionally with gap size beyond 32 feet, Ms. Penunuri seems to concede in her brief that it is no more dangerous to have a gap of 125 feet than one of 32 feet, where she argues: "A guide must keep the gaps in between the horses from 8 to 32 feet and anything beyond 32 feet will likely cause a horse to suddenly accelerate to catch up to the [herd]." Accordingly, Ms. Penunuri has failed to show that the guide's decision to proceed ahead to the clearing significantly increased the level of risk to her riders.

¶ 39 The presence of additional dangers on the trail does not alter this conclusion. The consensus among all witnesses was that a horse could accelerate unexpectedly where gaps between the horses had increased to over 32 feet. The guide, at the moment of deciding to proceed forward,[61] had to weigh the relative risks of allowing the

---

> Q: . . . So anything beyond three to four horses will cause that horse to run unexpectedly? Or can cause a horse to trot unexpectedly?
> A: Yeah.
> Q: That's a yes?
> A: Yes.
> Q: Is it likely a horse will trot unexpectedly if it was ten horse lengths?
> A: Yeah.

So rather than testify that a gap of 80 feet "will cause" a horse to accelerate unexpectedly, Mr. Whiteley in fact testified that it "likely would trot unexpectedly." But this testimony still does not indicate that it is significantly more dangerous to temporarily increase gaps between the horses to 125 feet in order to permanently reduce those gaps than it is to have outstanding gaps of more than 32 feet.

[61] Ms. Penunuri also argues that the court of appeals reached its conclusion by erroneously focusing on actions that the guide took prior to her decision to proceed to the clearing. As she puts it, the court of appeals decision implies that "a defendant merely has to demonstrate that it showed slight care at sometime [sic] in the relationship between the defendant and the plaintiff," even if the moment at which the defendant showed slight care is "unrelated to the actual negligence" at issue in the lawsuit. To demonstrate this point, Ms. Penunuri invokes a hypothetical involving a surgeon who, after taking a multitude of precautions preparing for and performing surgery, leaves a medical instrument inside a plaintiff

(Continued)

currently existing gaps to remain against the risks of proceeding past the dangers in order to reach the clearing, clear the trail of other riders, and return back to take the reins of the slowest horse. Ms. Penunuri has not presented anything beyond speculation that the decision to go ahead at that point was so dangerous relative to the existing risk of having gaps in the train of horses as to evince "utter disregard" for the safety of the riders. And our summary judgment standard does not permit a plaintiff to reach the jury when it would be forced to resort to speculation.

¶ 40 We accordingly affirm the court of appeals' conclusion that no reasonable fact finder could find gross negligence under the undisputed facts of this case.

### III. The District Court Did Not Abuse Its Discretion in Awarding Deposition Costs to Sundance

¶ 41 Finally, we address Ms. Penunuri's challenge to the district court's decision to award deposition costs to Sundance. Rule 54(d)(1) of the Utah Rules of Civil Procedure provides that, "[u]nless a statute, these rules, or a court order provides otherwise, costs should be allowed to the prevailing party." In *Frampton v. Wilson*, we said the costs associated with taking certain depositions may be taxed as costs, "subject to the limitation that the trial court is persuaded that they were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case."[62]

¶ 42 Ms. Penunuri relies on a later case, *Young v. State*.[63] Although *Young* recognized the "general rule" from *Frampton* that

---

and fails to immediately retrieve it. She argues that the earlier precautions, while certainly slight care, should not protect the surgeon from a lapse of even slight care in the challenged moment of decision. We agree with Ms. Penunuri that predicate acts of precaution do not necessarily immunize a defendant from a subsequent act of gross negligence. We accordingly assess the guide's conduct throughout the events in question, including the challenged moment of decision that Ms. Penunuri emphasizes.

[62] 605 P.2d 771, 774 (Utah 1980).

[63] 2000 UT 91, 16 P.3d 549.

we have just quoted,[64] Ms. Penunuri reads it to add some further caveats, relying on a subsequent portion of the case where we said

> deposition costs can be recovered if the trial court determines that the deposition was essential to the case, either because the deposition was used in some meaningful way at trial or because the development of the case was of such a complex nature that the information provided by the deposition could not have been obtained through less expensive means of discovery.[65]

Ms. Penunuri argues that this limitation restricts the scope of the standard we articulated in *Frampton*. But in *Giusti v. Sterling Wentworth Corp.*,[66] a case decided nine years after *Young*, we referred to the rule from *Frampton*, without reference to *Young*'s purported limitations. In *Giusti*, we said that

> "Costs" as used in rule 54 refers to fees that are paid to the court, fees that are paid to witnesses, costs that are authorized by statute, and costs incurred in taking depositions, subject to the limitation that they were taken in good faith and appear to be essential for the development and presentation of the case.[67]

We then held that the district court "applied the correct standard" when it followed the rule, in keeping with *Frampton*, that "there are two requirements for awarding deposition costs: the trial court must be persuaded that (1) the depositions were taken in good faith, and (2) they must appear to be essential to the development of the case."[68]

¶ 43 Today we clarify that *Giusti* articulates the correct approach. So long as the district court is "persuaded that [the depositions] were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case," the

---

[64] *Id.* ¶ 6 (quoting *Highland Constr. Co. v. Union Pac. R.R. Co.*, 683 P.2d 1042, 1051 (Utah 1984) (quoting *Frampton*, 605 P.2d at 774)).

[65] *Young*, 2000 UT 91, ¶ 7.

[66] 2009 UT 2, 201 P.3d 966.

[67] *Id.* ¶ 80 (citing *Frampton*, 605 P.2d at 773).

[68] *Id.* ¶¶ 84, 86.

court has discretion to award those costs to the prevailing party.[69] The district court need not conclude that the depositions were in fact essential to the case for one of the two reasons articulated in *Young*. Properly viewed, the quoted portion of *Young* simply articulated some of the ways in which depositions might be essential to a case — we do not view it as having articulated the *only* ways in which depositions can be essential to a case.

¶ 44 Here, the district court included a detailed explanation of why the depositions were "taken in good faith" and "appeared to be essential for the development of the case." The district court carefully described the role each deposition played in Sundance's summary judgment motions, expressly concluding that the depositions "were used in a meaningful way in" these motions and "were necessary to development of this complex case." This was not an abuse of discretion under the standard we articulated in *Frampton*, upheld in *Giusti*, and reaffirm today.

### Conclusion

¶ 45 We clarify that — consistent with rule 56 — summary judgment dismissing a gross negligence claim may be granted where reasonable minds could not conclude that the defendant demonstrated carelessness or recklessness to a degree that shows utter indifference to the consequences. We repudiate the holdings of our prior cases that treated the requirement that the standard of care be "fixed by law" as a prerequisite to summary judgment. The undisputed facts of this case would not permit a reasonable fact finder to reach a determination of gross negligence. Finally, the district court had discretion to award Sundance its deposition costs where the court concluded they were taken in good faith and, in light of the circumstances, appeared to be essential for the development and presentation of the case.

---

[69] *Frampton*, 605 P.2d at 774.