2020 UT App 5

# THE UTAH COURT OF APPEALS

SCOTT HOWE,
Appellee,
*v.*
MOMENTUM LLC,
Appellant.

Opinion
No. 20190187-CA
Filed January 3, 2020

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 160901585

Andrew D. Wright and A. Joseph Sano, Attorneys
for Appellant

Ralph C. Petty, Attorney for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1      Scott Howe sued Momentum LLC under a theory of gross negligence[1] for injuries he sustained while "bouldering."[2]

---

1. Howe also sued Momentum for ordinary negligence, but that claim was dismissed on summary judgment because it "[wa]s extinguished by the pre-injury release signed by [Howe]" and he does not appeal the dismissal of his ordinary negligence claim.

2. According to Momentum, "bouldering" in the context of indoor climbing refers to "free climbing, without ropes or harnesses," in which "climbers use small rock formations or artificial rock walls for hand- and foot-holds."

Momentum moved for summary judgment, which the district court denied because the disputed facts were sufficient to raise a jury question. The district court also ruled that Howe's expert (Expert) was qualified to testify on the industry standard of care. The matter is before this court on an interlocutory appeal challenging the court's denial of the summary judgment motion and its decision to permit Expert to testify. We affirm and remand for further proceedings.

BACKGROUND[3]

¶2 Momentum is an indoor-climbing facility with a separate area for bouldering. The bouldering area's concrete floor is covered by approximately twelve inches of foam padding overlain by thick vinyl, known as an "impact attenuation surface." In the years after Momentum's 2007 opening, some of the vinyl began to tear and separate. In late September 2011, Momentum had "[a]t least one" tear repaired with a welded vinyl patch.

¶3 But Momentum's management team deemed these tear patches a hazard for tripping,[4] so it placed modular

_____

3. On appeal from a district court's summary judgment ruling, we recite "the facts and all reasonable inferences drawn therefrom in the light most favorable to" Howe, the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (quotation simplified). Conflicting evidence is presented "only as necessary to understand issues raised on appeal." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 8 n.3, 372 P.3d 629 (quotation simplified).

4. In Howe's view, the vinyl weld "proved effective and alleviated the defective condition of the floor in the repaired area."

one-inch-thick mats over certain areas of the bouldering area floor that were showing signs of wear or damage. The mats are not designed to be anchored to the underlying pad and they would sometimes move when people landed on them. Because the mats tended to move, Momentum staff "monitored the floor regularly to try to keep the [mats] in place." In addition to this action, a Momentum employee altered the routes above those areas by reconfiguring and reducing the number of foot- and hand-holds to reduce customer use of the areas with worn and damaged padding.

¶4 Over the years—and prior to Howe's injury—Momentum's patrons had reported incidents, some of which involved injuries, which alerted Momentum to the fact that the padding in the bouldering area was worn and damaged in some places. Before Howe was injured, five incidents were reported before Momentum began using the mats and another eight were reported thereafter. Each of these injuries involved a climber dropping from the bouldering wall or "slab area" to the floor below and, upon landing, pushing a foot through the floor padding, making contact with the concrete floor below, either rolling or twisting an ankle in the process.

¶5 In March 2012, Howe was bouldering at Momentum. After finishing his bouldering route, Howe dropped off the wall to the floor below. As he made contact with the floor, his "left foot impacted the mat on top of the padded floor, causing the mat to move. As the mat moved, it exposed the padded floor beneath. Concealed under the mat, the cover of the pad was split in a straight line, exposing the abutting edges of pads below." When Howe's "right foot impacted the top of the two abutting pads, [his] foot passed between the two abutting pads to the floor beneath." As a result of the contact with the concrete, Howe broke his right ankle.

¶6 Howe sued, asserting—among other things—that Momentum was grossly negligent. He alleged that Momentum, "with a knowing and reckless indifference and disregard for the safety of [Howe] and other members of [Momentum], concealed, or caused to be concealed, the defects in their floor padding by placing mats over the defective area."

¶7 Howe designated a liability Expert. Expert has a bachelor's degree in chemical engineering and petroleum refining, as well as a master's degree in metallurgical and materials engineering. His professional experience includes research and development engineering as well as forensic engineering. Expert owns a forensic engineering company that specializes in "metallurgical, materials, and mechanical failure analysis"; "materials evaluation and testing"; "product liability and analysis"; "fire and explosion cause and origin"; "industrial, recreational, and construction accident analysis"; and "chemical and mechanical systems failure analysis." Expert has been an expert witness in numerous cases, one of which involved a mechanical failure that caused an indoor climbing accident. He has also had professional experience with evaluating impact attenuation surfaces in the ski industry.

¶8 Expert opined that Momentum did not take appropriate steps to protect climbers in the bouldering area. Indeed, Expert concluded that

> Momentum significantly elevated the risk of injury to climbers in the bouldering area by (1) failing to repair, restrict access, clearly mark, cordon off, close walls, or close areas around and near the areas where the vinyl padding cover was damaged, and by (2) placing the [mats] over the damaged areas of the padding cover, thus concealing the hazard created by the damage.

In Expert's opinion, appropriate steps to remedy the problem could have included using "warning signs, closing the sections of the floor or wall near damaged areas," removing the hand- and foot-holds above the damaged padding, making inaccessible the damaged padding areas, or repairing the damaged padding. During deposition testimony, Expert explained that "those are ways to prevent the public from interacting with the obvious hazard created by the opening in the pads." This approach was based on his "engineering background and experience in dealing with hazards." In short, his opinion is that "gluing and adhering . . . a large patch of vinyl over the tear" would have been safer than using the mats.

¶9     Momentum moved for summary judgment, arguing the undisputed facts established that it exercised at least slight care to protect climbers using its facility, which meant Howe could not demonstrate gross negligence. Momentum also moved to exclude Expert, claiming he was unqualified to opine upon the standard of care in the indoor-climbing industry. The district court denied these motions, and Momentum successfully petitioned this court for an interlocutory appeal.

ISSUES AND STANDARDS OF REVIEW

¶10    Momentum raises two issues on appeal. First, it claims the district court erred when it denied Momentum's motion for summary judgment. Denials of summary judgment are questions of law reviewed for correctness. *Glenn v. Reese*, 2009 UT 80, ¶ 6, 225 P.3d 185.

¶11    Second, Momentum claims the district court erred when it denied Momentum's motion to exclude Expert. A district court's determination regarding the admissibility of expert testimony is reviewed for abuse of discretion. *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 16, 269 P.3d 980.

ANALYSIS

I. Summary Judgment

¶12 Summary judgment shall be granted "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). In this case, the district court denied Momentum's motion for summary judgment on Howe's claim for gross negligence, based on its finding that there were "numerous genuine issues of disputed material fact."

¶13 In reviewing a district court's summary judgment decision, appellate courts "must evaluate all the evidence and all reasonable inferences fairly drawn from the evidence in a light most favorable to the party opposing summary judgment to determine whether there is a material issue of fact to be tried." *Horgan v. Industrial Design Corp.*, 657 P.2d 751, 752 (Utah 1982). "Gross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result. Summary judgment is proper where reasonable minds could reach only one conclusion based on the applicable material facts." *Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 35, 423 P.3d 1150 (quotation simplified).

¶14 Citing *Penunuri* and *Blaisdell v. Dentrix Dental Systems, Inc.*, 2012 UT 37, 284 P.3d 616, Momentum argues that "the undisputed material facts of this case show that [it] exercised care, far more than even slight care, and was not careless or reckless, let alone to a degree that shows utter indifference," and that therefore "the district court erred in denying Momentum's motion for summary judgment." (Quotation simplified.) Momentum points out that it "[u]ndisputedly . . . took steps to protect climbers from being injured by the wear and tear damage that had developed in its

primary padding," including using welded patches, "thinn[ing] out" the climbing routes, and, "[a]fter determining that the . . . patches created tripping hazards," using the mats and monitoring their positioning. In Momentum's view, these steps demonstrate that it took at least slight care and was not utterly indifferent to the consequences that could result from a failure to take care.

¶15 Howe acknowledges that Momentum took these steps, but argues they were inadequate. He further asserts that Momentum's use of the pads to cover the defective flooring concealed the risk and rendered the climbers "defenseless against the dangerous conditions known to Momentum," and claims that his "inability to see the dangerous flooring over which he was climbing contributed to his injuries." At oral argument before this court, Howe argued this concealment "dramatically magnified" the risk of harm.

¶16 We note the tension between our supreme court's recent articulation of the elements of gross negligence as "the failure to observe even slight care," *Penunuri*, 2017 UT 54, ¶ 35 (quotation simplified), and the language of a subsequent paragraph suggesting that "the essential evidence needed to survive a defendant's motion for summary judgment on a gross negligence claim" is "evidence that the defendant's conduct dramatically magnified the risk of harm to the plaintiff," *id.* ¶ 37. We can envision situations in which the straightforward application of the elements identified in paragraph 35 might dictate a grant of summary judgment in favor of the defendant while the application of the elements identified in paragraph 37 might dictate the denial of summary judgment. But we need not explore this tension further here because Momentum's failure to take further action in the face of eight additional incidents creates questions of fact about whether it was grossly negligent, even assuming that paragraph

35 sets forth the correct formulation of the elements of gross negligence.

¶17 Although Momentum took certain steps to remedy the problem created by the deterioration of the foam padding, injury incidents continued to occur even *after* implementation of Momentum's injury-avoidance strategy. It is beyond question that a plaintiff who can demonstrate that a defendant has taken no action in response to injury incidents will have likely made out at least a prima facie case of gross negligence, one sufficient to withstand summary judgment. *See id.* ¶ 16 ("Summary judgment dismissing a gross negligence claim is appropriate where reasonable minds could only conclude that the defendant was not grossly negligent under the circumstances . . . ."). We cannot see much of a distinction between that situation and the case Howe brings here: a defendant takes some action in response to injury incidents, and therefore arguably demonstrates slight care in the beginning, but takes no additional action after injury incidents continue to occur following implementation of its original strategy. Stated another way, we are not persuaded that a defendant who simply relies on a repeatedly-failed strategy to avert injury from a known risk is entitled to judgment as a matter of law on the "slight care" question.

¶18 In this case, five incidents, some of which involved injuries, motivated Momentum to take steps to address the problem and ultimately to place mats over the cracked foam padding. These acts arguably show that Momentum exercised slight care in the beginning and was therefore not completely indifferent to the consequences of allowing climbers to use the bouldering area given the condition of the padding. But by the time Howe was injured, eight more injuries had been reported to Momentum, even after it had thinned the routes and put down the extra pads. These eight additional climbers were injured in roughly the same manner as Howe: when they dropped from the

bouldering wall onto the floor below, the mat moved, their feet were caught in the crack in the foam padding, and their ankles were injured. Under these circumstances, the question of whether Momentum's continued use of the mats constituted gross negligence presents a disputed issue of material fact.

¶19 Because a reasonable finder of fact could determine, on this record, that Momentum was grossly negligent, the district court's denial of summary judgment was appropriate.

## II. Expert Testimony

¶20 The Utah Rules of Evidence allow "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a). Furthermore, "[s]cientific, technical, or other specialized knowledge may serve as the basis for expert testimony only if there is a threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts." *Id.* R. 702(b).

¶21 Momentum argues the district court abused its discretion in denying its motion to exclude Expert. First, it contends Expert's experience as an engineer did not qualify him to testify as to the applicable standard of care in the indoor-climbing industry. Second, Momentum contends that, because Expert did not evaluate or test vinyl floor padding or the mats used to cover the damaged areas, Expert's opinions did not meet the reliability standard imposed by rule 702 of the Utah Rules of Evidence.

¶22 But as Howe points out, Expert's training as a professional engineer with experience in "forensic engineering

and accident analysis in recreational settings," "slip and fall accident analysis," and "warnings, design, and standard of care issues" qualifies him to assist the finder of fact in making a determination of the standard of care in the indoor-climbing industry.

¶23 Expert's proposed testimony is that Momentum acted with indifference toward the safety of its members when it placed mats over the damaged padding; Expert opines that Momentum could have and should have taken alternative steps to mitigate the effects of the worn padding. As Howe points out, and the district court agreed, this testimony "will be helpful to the jury to understand the options Momentum had in addressing the damaged vinyl" and to avoid speculation regarding its options.

¶24 Further, as to reliability, Expert's opinion is based "upon [his] engineering education, experience, and training" and "knowledge . . . gained from being a forensic engineer . . . and studying padding and other types of accidents." In determining whether to allow an expert to offer an opinion, the district court's role is that of a "gatekeeper," meant "to screen out unreliable expert testimony." *Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶ 28, 269 P.3d 980 (quotation simplified). The court is afforded "broad discretion" when making this determination, and we "will reverse its decision only when it exceeds the bounds of reasonability." *Id.* ¶ 31 (quotation simplified). Here, the court's determination that Expert's opinion was sufficiently reliable does not "exceed[] the bounds of reasonability," and we decline to reverse it. *See id.* (quotation simplified). Expert's opinion meets the threshold showing of reliability and "will help the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a). Therefore the district court did not abuse its discretion in denying Momentum's motion to exclude his testimony.

CONCLUSION

¶25    Because there are material facts in dispute, the district court properly denied Momentum's summary judgment motion. Furthermore, the court did not abuse its discretion in denying Momentum's motion to exclude Expert. We affirm the district court's rulings on these points and remand for further proceedings.

———————